## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### BANKRUPTCY DIVISION
### ST. CROIX, VIRGIN ISLANDS

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Chapter 11 |
| HOVENSA L.L.C., | ) | |
| | ) | Case No. 1:15-bk-10003-MFW |
| Debtor. | ) | |
| | ) | |

## DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS (A) APPROVING POST-PETITION FINANCING; (B) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (C) MODIFYING THE AUTOMATIC STAY; (D) SCHEDULING INTERIM AND FINAL HEARINGS; AND (E) GRANTING RELATED RELIEF

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................... 1

JURISDICTION AND VENUE ............................................................................ 3

RELIEF REQUESTED.......................................................................................... 3

BACKGROUND ................................................................................................... 6

    A.    The Debtor's Existing Secured Obligation ....................................... 6

    B.    The Debtor's Relationship With and Prepetition  Obligations to the
        Lenders and their Affiliates ............................................................. 7

    C.    The Debtor's Immediate Need for Liquidity ..................................... 8

    D.    Summary of Terms of the DIP Agreement ......................................... 9

THE DIP FINANCING SHOULD BE APPROVED.................................................. 17

    A.    The DIP Facility Should be Approved Under Section 364 of the
        Bankruptcy Code ........................................................................... 17

        (i)    The Debtor was Unable to Obtain Necessary  Postpetition
               Financing on an Unsecured Basis ......................................... 18

        (ii)    The DIP Facility is Necessary to Preserve  and Protect the Assets
               of the Debtor's Estate.......................................................... 19

        (iii)    The Terms of the DIP Facility are Entirely Fair, Reasonable  and
               Appropriate Under the Circumstances.................................... 20

        (iv)    Financing Pursuant to Bankruptcy Code  Section 364(d) is
               Appropriate ......................................................................... 22

    B.    Entry into the DIP Agreement Reflects  an Exercise of the Debtor's
        Reasonable Business Judgment ......................................................... 22

THE AUTOMATIC STAY SHOULD BE MODIFIED ............................................. 23

INTERIM APPROVAL SHOULD BE GRANTED .................................................. 24

ESTABLISHING NOTICE PROCEDURES AND SCHEDULING FINAL HEARING .......... 25

WAIVER OF BANKRUPTCY RULE 6004(h) ...................................................... 25

NOTICE................................................................................................................ 25

CONCLUSION...................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bray v. Shenandoah Federal Savings & Loan Association*,
    789 F.2d 1085 (4th Cir. 1986) ................................................................18

*In re Aqua Associates*,
    123 B.R. 192 (Bankr. E.D. Pa. 1991) ....................................................18

*In re Crouse Group, Inc.*,
    71 B.R. 544 (Bankr. E.D. Pa. 1987), *modified on other grounds*, 75 B.R. 553 (Bankr.
    E.D. Pa. 1987) ........................................................................................18

*In re Farmland Industries, Inc.*,
    294 B.R. 855 (Bankr. W.D. Mo. 2003)..................................................23

*In re Filene's Basement, LLC*,
    2014 WL 1713416 (Bankr. D. Del. Apr. 29, 2014) ...............................23

*In re Los Angeles Dodgers LLC*,
    457 B.R. 308 (Bankr. D. Del. 2011) ......................................................18

*In re Simasko*,
    47 B.R. 444 (Bankr. D. Colo. 1985) ......................................................24

*In re Sky Valley, Inc.*,
    100 B.R. 107 (Bankr. N.D. Ga. 1988), *aff'd sub nom, Anchor Sav. Bank FSB v. Sky
    Valley, Inc.*, 99 B.R. 117 (N.D. Ga. 1989)............................................19

*In re Tenney Village Co.*,
    104 B.R. 562 (Bankr. D.N.H. 1989) ......................................................21

*In re Western Pacific Airlines, Inc.*,
    223 B.R. 567 (Bankr. D. Colo. 1997) ....................................................20

*In re YL West 87th Holdings I LLC*,
    423 B.R. 421 (Bankr. S.D.N.Y. 2010) .............................................22, 23

*Richmond Leasing Co. v. Capital Bank, N.A.*,
    762 F.2d 1303 (5th Cir. 1985) ...............................................................23

*Trans World Airlines, Inc. v. Travellers International AG*,
    163 B.R. 964 (Bankr. D. Del. 1994) ......................................................23

**STATUTES**

11 U.S.C. § 105...............................................................................................3, 4

ii

11 U.S.C. § 105(a) .................................................................................................................3

11 U.S.C. § 326 ......................................................................................................................4

11 U.S.C. § 327 ....................................................................................................................21

11 U.S.C. § 328 ......................................................................................................................5

11 U.S.C. § 330 ......................................................................................................................5

11 U.S.C. § 331 ......................................................................................................................5

11 U.S.C. § 361 ......................................................................................................................3

11 U.S.C. § 362 ...........................................................................................................3, 5, 16

11 U.S.C. § 363(b) ...............................................................................................................25

11 U.S.C. § 363(c)(2) .............................................................................................................3

11 U.S.C. § 364 .............................................................................................................passim

11 U.S.C. § 503 .........................................................................................................5, 17, 18

11 U.S.C. § 506(c) .........................................................................................................13, 14

11 U.S.C. § 507 ...........................................................................................................3, 5, 17

11 U.S.C. § 546 ......................................................................................................................5

11 U.S.C. § 552(b) ...............................................................................................................14

11 U.S.C. § 553 ....................................................................................................................11

11 U.S.C. § 726 ..............................................................................................................4, 13

11 U.S.C. § 1103 ..................................................................................................................21

11 U.S.C. § 1106(a) and (b) ................................................................................................12

11 U.S.C. § 1107 and 1108 ....................................................................................................6

28 U.S.C. §§ 157 and 1334 ....................................................................................................3

28 U.S.C. § 157(b) .................................................................................................................3

28 U.S.C. §§ 1408 and 1409 ..................................................................................................3

28 U.S.C. § 1930(a) .............................................................................................................13

ny-1203361

31 U.S.C. § 3717 .................................................................................................................... 13

**OTHER AUTHORITIES**

Bankruptcy Rules 2002, 4001 and 9014 ................................................................................ 3

Bankruptcy Rule 4001(c) ..................................................................................................... 24

Bankruptcy Rule 4001(c)(1)(B) ............................................................................................. 9

Bankruptcy Rule 4001(c)(2) ................................................................................................... 5

Bankruptcy Rule 6004(h) ..................................................................................................... 25

# PRELIMINARY STATEMENT[1]

1.      The Debtor has filed this chapter 11 case with the goal of consummating a sale of the Debtor's assets that maximizes recoveries for all of the Debtor's stakeholders and, at the same time, promotes the best interests (both economic and environmental) of the USVI and its residents.  In furtherance of these objectives, the Debtor has filed the *Debtor's Motion For Entry of Orders (A)(I) Establishing Bidding Procedures Relating to the Sale of the Debtor's Assets, Including Approving Break-Up Fee and Expense Reimbursement, (II) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Including Notice of Proposed Cure Amounts, (III) Approving Form and Manner of Notice Relating Thereto, and (IV) Scheduling a Hearing to Consider the Proposed Sale; (B)(I) Approving the Sale of the Debtor's Assets Free and Clear of all Liens, Claims, Encumbrances, and Interests, and (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* (the "Sale Motion") concurrently herewith, which seeks approval of bidding procedures and a sale transaction to a stalking horse bidder or another third-party (the "Sale Transaction").[2]

2.      However, in order to consummate the Sale Transaction and fund the costs of this chapter 11 case, the Debtor desperately requires additional liquidity.  Because the Debtor is no longer an operating company, third-party financing is not available.  As such, and in light of the commitment of the Debtor's owners, HOVIC and PDV-VI (together, the "Lenders") to the sale process, the owners have agreed to provide the Debtor with the additional financing, subject to

---

[1]   Capitalized terms not otherwise defined in this preliminary statement shall have the meaning ascribed to them elsewhere in this motion.

[2]   The relevant facts supporting the relief requested in the Sale Motion are incorporated herein by reference.

1

the terms and conditions of the relief requested herein.  The DIP Facility, if approved, will ensure that the Debtor has the financial wherewithal to complete the Sale Transaction, pay the costs of administering this chapter 11 case, maintain its facilities, and comply with various environmental, operational, and safety regulations and related requirements.  Consummating the Sale Transaction and complying with such regulations and requirements is in the best interests of the GVI and USVI residents.

3. The DIP Facility is a senior secured, superpriority, delayed-draw financing facility, which provides for a total funding commitment of $40 million.  Of the $40 million, $10 million will be available to the Debtor upon the entry of the Interim Order.  The remaining $30 million will be available to the Debtor through delayed draws as necessary after the entry of the Final Order, subject to certain terms and conditions in the DIP Agreement.  Furthermore, the DIP Agreement is priced below-market and otherwise contains terms and conditions that are entirely fair under the circumstances.  One of the most favorable elements of the DIP Facility is the Lenders' agreement to provide financing on a junior basis with their liens subordinate to the lien held by the GVI in connection with the DPNR Settlement Agreement.  The Lenders could have sought to prime the GVI's lien, however, the Lenders have agreed to provide the DIP Facility on a junior basis in an effort to work constructively and consensually with the GVI towards the consummation of a Sale Transaction that will pay the GVI Secured Claim in full and maximize value for all other stakeholders.

4. For these reasons and the reasons discussed below, the Motion should be granted on an interim and final basis.

2

## JURISDICTION AND VENUE

5.        This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).[3]  Venue is proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

6.        By this motion (the "Motion"), HOVENSA L.L.C., as debtor and debtor-in-

possession (the "Debtor"), seeks entry of an interim order (the "Interim Order"), substantially in

the form attached hereto as **Exhibit A**, and a final order (the "Final Order," and together with the

Interim Order, the "DIP Orders"), pursuant to sections 105, 361, 362, 363(c)(2), 364(d) and 507

of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 4001 and 9014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 4001-1, 4001-2, and

4001-3 of the Local Bankruptcy Rules of the District Court of the Virgin Islands, Bankruptcy

Division (the "Local Rules"), providing for, among other things:

> (i)        this Court's authorization, pursuant to sections 105(a), 361, 362, 363, and
>
> 364(c), (d), and (e) of the Bankruptcy Code, and Bankruptcy Rules 2002, 4001 and 9014
>
> for the Debtor, in its capacity as borrower (the "Borrower") to enter into a debtor-in-
>
> possession financing agreement (the "DIP Agreement"), substantially in the form
>
> attached hereto as **Exhibit B** with Lenders, to obtain cash advances and other extensions
>
> of credit on a first-priority secured basis, in an aggregate amount not to exceed $40
>
> million, (the "DIP Facility", and the loans under such facility, the "DIP Loans") on the
>
> terms of the DIP Agreement (together with any and all documents, agreements, and

---

[3]    To the extent that it is later determined that the Court, absent consent of the parties, cannot
enter final orders or judgments in connection herewith consistent with Article III of the
United States Constitution, the Debtor consents to the entry of a final order by the Court in
connection with this Motion.

instruments delivered pursuant thereto or executed and filed in connection therewith, as may be amended hereafter from time to time, including without limitation, the Budget (defined below), collectively, the "DIP Documents");

(ii)        this Court's ordering, pursuant to sections 364(c)(1), (2), (3), and 364(d) of the Bankruptcy Code, that the obligations of the Debtor under the DIP Documents (collectively, the "DIP Obligations") are:

(a)        secured under sections 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code by an automatically fully perfected, valid, enforceable, unavoidable, and first-priority security interest and lien on all of the Debtor's assets and all "property of the estate" (within the meaning of the Bankruptcy Code), of any kind or nature whatsoever, including all real and personal property, tangible or intangible or mixed whether now owned or existing or hereafter acquired or created, subject only to:  (x) the First Priority Mortgage, dated as of May 28, 2014 (the "First Priority Mortgage"), granted by the Debtor in favor of the Government of the United States Virgin Islands ("GVI") and solely to the extent of obligations thereunder outstanding immediately prior to the Petition Date (as defined below) of the Chapter 11 Case (to the extent such claim is valid, the "GVI Secured Claim"), (y) Permitted Encumbrances (as defined in the DIP Agreement), and (z) payment of the Carve-Out (as defined in the DIP Agreement);

(b)        granted an allowed superpriority administrative expense claim in the Debtor's bankruptcy case (and against the Debtor's estate created pursuant to section 541 of the Bankruptcy Code) pursuant to section 364(c)(1) of the Bankruptcy Code having priority over all administrative expenses of the kind specified in or arising under any section of the Bankruptcy Code (including, without limitation, sections 105, 326,

4

328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c) or 726 thereof), subject only to the GVI Secured Claim, Permitted Encumbrances and payment of the Carve-Out on the terms and conditions set forth herein;

(iii)        this Court's finding that the Lenders are entitled to the protections provided in section 364(e);

(iv)        this Court's authorization of a modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents, the Interim Order and the Final Order;

(v)        this Court's scheduling, pursuant to Bankruptcy Rule 4001(c)(2) an interim hearing (the "Interim Hearing") to consider entry of the Interim Order, which, among other things, (i) approves, on an interim basis, the postpetition financing to be made pursuant to the DIP Documents and (ii) authorizes the Debtor to obtain the DIP Loans on an interim basis, in accordance with the DIP Documents, and following entry of this Interim Order, in the aggregate principal amount of up to $10 million (the "Interim DIP Facility Commitment") in accordance with the budget annexed hereto as **Exhibit C** (as may be modified, amended, restated or supplemented with the consent of the DIP Lenders, each in their sole discretion on the terms set forth in the DIP Documents and the terms hereof, the "Budget");

(vi)        this Court's scheduling, pursuant to Bankruptcy Rule 4001(c)(2), of a final hearing (the "Final Hearing") to consider entry of the Final Order, which, among other things, (i) approves, on a final basis, the postpetition financing to be made pursuant to the DIP Documents, and (ii) authorizes the Debtor to obtain the DIP Loans on a final basis,

in accordance with the DIP Documents and following entry of a Final Order, in the aggregate principal amount of up to $40 million in accordance with the Budget, and (iii) approves the form of notice with respect to the Final Hearing.

7.       In support of the Motion, the Debtor relies upon the *Certification of Thomas E. Hill in Support of Chapter 11 Petition and First Day Motions* (the "Hill Certification"), and the *Declaration of Christopher H. Langbein in Support of the Debtor's Motion For Interim and Final Orders (A) Approving Post-Petition Financing; (B) Granting Liens and Providing Superpriority Adminstrative Expense Claims; (C) Modifying the Automatic Stay; (D) Scheduling Interim and Final Hearings; and (E) Granting Related Relief* (the "Langbein Declaration"), each of which has been filed concurrently herewith.

## BACKGROUND

8.       On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.  The Debtor is managing and operating its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory creditors' committee has been appointed in this chapter 11 case.

9.       Information regarding the Debtor's business operations, its assets and liabilities, and the circumstances leading to the commencement of this chapter 11 case is set forth in the Hill Certification, which is incorporated by reference herein.

A.       **The Debtor's Existing Secured Obligation**

10.       As of the Petition Date, the Debtor and the GVI are parties to a First Priority Mortgage dated May 28, 2014.  The First Priority Mortgage was issued in connection with that certain settlement agreement between the Debtor and the GVI dated May 28, 2014 (the "DPNR Settlement Agreement").  The First Priority Mortgage secures the $40 million claim of the GVI

6

under the DPNR Settlement Agreement and grants a first priority lien on:  (a) the Debtor's real property as described on <u>Exhibit A</u> to the First Priority Mortgage (the "<u>Premises</u>"); (b) all appliances, fixtures, equipment, and buildings located on the Premises; (c) the Debtor's rights, title, and interest in any agreements, leases, and contracts relating to the Premises; (d) the Debtor's rights, title, and interest in sales contracts, installment sales contracts, and any other agreements relating to the Premises; and (e) all insurance proceeds.

**B.      The Debtor's Relationship With and**
**          <u>Prepetition Obligations to the Lenders and their Affiliates</u>**

11.     Prior to the Petition Date, the Debtor issued two separate promissory notes, dated April 1, 2012, each in the principal amount of $811 million, to Hess Oil Virgin Islands Corp. ("<u>HOVIC</u>") and Petróleo de Venezuela, S.A. ("<u>PPSA</u>") (such notes, the "<u>2012 Promissory Notes</u>").  The 2012 Promissory Notes each matured on April 1, 2013, but both remain unpaid. As of the Petition Date, a total of approximately $1.864 billion (inclusive of interest) is outstanding under the 2012 Promissory Notes (the "<u>2012 Promissory Note Indebtedness</u>").  The amount owed to PPSA was the amount then outstanding and unpaid for delivered crude oil, and the amount owed to HOVIC was for funds loaned to the Debtor to repay its outstanding indebtedness and for other purposes.

12.     In July 2015, the Lenders each made a $5 million unsecured loan to the Debtor in order to provide the Debtor with the incremental liquidity necessary to be able to negotiate and execute a sale transaction that would result in significant value for all of the Debtor's stakeholders, the USVI, and the USVI's residents.  To evidence that loan, the Debtor issued two separate promissory notes, dated July 8, 2015, each in the principal amount of $5 million, to HOVIC and PDVSA V.I., Inc. ("<u>PDV-VI</u>")  (such notes, the "<u>2015 Promissory Notes</u>" and together with the 2012 Promissory Notes, the "<u>Promissory Notes</u>").  The 2015 Promissory Notes

7

each mature on December 31, 2015.  As of the Petition Date, a total of approximately $10 million is outstanding under the 2015 Promissory Notes (together with the 2012 Promissory Note Indebtedness, collectively, the "Prepetition Indebtedness").

## C.      The Debtor's Immediate Need for Liquidity

13.      As explained in greater detail in the Hill Certification, the DIP Facility will be used to provide liquidity for working capital and other general corporate purposes of the Debtor, and will permit the Debtor to engage in a marketing and auction process for the sale of the Debtor's assets.  In addition, in the ordinary course of business, the Debtor incurs significant inspection, maintenance, and oversight expenses and must comply with various environmental, operational, and safety regulations and related requirements.  Compliance with such regulations and requirements is essential to, among other things, facilitate the Sale Transaction.

14.      As detailed in the Hill Certification, as of the Petition Date, the Debtor only has $750,000 of cash on hand.  Due to its declining cash position, the Debtor has an immediate and necessary need to obtain postpetition financing under the DIP Facility in order to complete the sale transaction and fund the costs of this chapter 11 case.  The proposed DIP Facility also will provide the Debtor with the capital to meet its obligations to its consultants, independent contractors, and vendors.  Without the funds made available through the DIP Facility, the Debtor will be unable to meet its obligations and risks losing the opportunity to sell its assets and maximize value for all stakeholders.[4]

---

[4]     In addition, by this Motion the Debtor seeks authority to use funds made available through the DIP Facility to enter into D&O "tail policies" in accordance with the Budget.

ny-1203361

D.      **Summary of Terms of the DIP Agreement**[5]

15.     The salient terms of the DIP Agreement are as follows, including those that are required to be identified in accordance with Bankruptcy Rule 4001(c)(1)(B) and Local Rule 4001-2(B):[6]

| Required Disclosures | Summary of Material Terms | Location of Provision in Relevant Document(s) |
|---|---|---|
| **DIP Agreement Parties** | <u>Borrower</u>:  HOVENSA L.L.C.<br><br><u>Lenders</u>:  HOVIC and PDV-VI | Preamble |
| **DIP Commitments** | <u>Interim Financing Commitment</u>: An aggregate amount of up to $10 million<br><br><u>Final Financing Commitment</u>: An aggregate amount of $40 million | Sections 2.1(a)(i) and (ii) |
| **Use of Proceeds** | Borrower shall apply the proceeds of Advances (i) to pay costs and expenses in connection with the DIP Facility and the Chapter 11 Case and (ii) to provide ongoing working capital financing for Borrower and provide financial for general corporate purposes, in each case subject to compliance with the terms, conditions and amounts set forth in the Budget. | Section 2.11 |

---

[5]     For purposes of this summary only, capitalized terms used but not otherwise defined shall have the meanings given to such terms in the DIP Agreement or DIP Orders, as applicable.

[6]     This summary is qualified in its entirety by reference to the provisions of the DIP Agreement. The DIP Agreement will control in the event of any inconsistency between this Motion and the DIP Agreement.

ny-1203361

| Required Disclosures | Summary of Material Terms | Location of Provision in Relevant Document(s) |
|---|---|---|
| **Interest Rate** | Interest Rate:  Interest on Advances shall be payable in arrears on the first day of each month with respect to Domestic Rate Loans.   Interest charges shall be computed on the actual principal amount of Advances outstanding during the month at a rate per annum equal to 9.00% (as applicable, the "Contract Rate").<br><br>Default Interest: The Contract Rate plus two (2.00%) percent per annum. | Section 3.1 |
| **Maturity Date** | Maturity Date:   the earlier to occur of (a) the date of the closing of the HOVENSA Sale, (b) 150 days from the Petition Date, (c) the date on which the Asset Purchase Agreement in connection with the HOVENSA Sale terminates pursuant to its terms or is ineffective for any reason, (d) upon seven (7) Business Days' notice to Borrower,  the date on which, in the reasonable judgment of the Lenders, the HOVENSA Sale process has been abandoned or is unlikely to result in the consummation of the HOVENSA Sale prior to the date that is 150 days from the Petition Date and (e) the date on which either Lender accelerates the Advances following the occurrence of an Event of Default. | Definitions |
| **Bankruptcy Related Events of Default** | The occurrence of any one or more of the following bankruptcy case events shall constitute an "Event of Default":<br><br>(a)     The entry of the Interim Financing Order shall not have occurred by the 3rd day following the Petition Date in form and substance satisfactory to Lenders.<br><br>(b)     The entry of the Final Financing Order in form and substance satisfactory to Lenders each in their sole discretion shall not have occurred by the earlier of the expiration of the Interim Financing Order and the 30th day following the Petition Date.<br><br>(c)     The entry of the Bidding Procedures Order shall not have occurred by the 24th day following the Petition Date in form and substance satisfactory to the Lenders.<br><br>(d)     The entry of the HOVENSA Sale | Article X |

10

| Required Disclosures | Summary of Material Terms | Location of Provision in Relevant Document(s) |
|---|---|---|
| | Order in form and substance satisfactory to the Lenders shall not have occurred by the 60th day following the Petition Date.<br><br>(e) The date upon which (i) all conditions precedent to the closing of the HOVENSA Sale shall have been satisfied or waived or (ii) a plan of reorganization or liquidation for the Debtor becomes effective shall not, in each case, have occurred by December 31, 2015.<br><br>(f) The existence of any other Superpriority Claim (other than the GVI Claim and the Carve-Out) in the Chapter 11 Case which is *pari passu* with or senior to the claims of the Lenders against Borrower, or there shall arise or be granted any such *pari passu* or senior Superpriority Claim (other than the GVI Claim and the Carve-Out).<br><br>(g) The payment of any liabilities arising prior to the Petition Date without the consent of the Lenders other than as set forth in the First Day Orders or the Financing Orders.<br><br>(h) The entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay to allow any creditor to execute upon or enforce a lien on or security interest in any assets of the Debtor with a fair market value in excess of $200,000 (unless the Lenders consent to such relief); provided that this clause (a) shall not apply (x) to any order granting relief from the automatic stay to the extent of permitting a creditor to exercise valid setoff rights pursuant to section 553 of the Bankruptcy Code, the Financing Orders, the First Day Orders or (y) to any order to the extent the relevant claim is covered by insurance of Debtor.<br><br>(i) The entry of any order of the Bankruptcy Court (or any other court of competent jurisdiction) reversing, vacating, or modifying (in a manner adverse in any material respect to the Lenders) without the consent of the Lenders, any Financing Order, this | |

11

| Required Disclosures | Summary of Material Terms | Location of Provision in Relevant Document(s) |
|---|---|---|
| | Agreement or any of the Other Documents, and such order shall not be reversed or vacated for a period in excess of three (3) days after the entry thereof. | |
| | (j)    The filing by the Debtor of (or the consent by the Debtor to) a motion or pleading seeking to reverse, amend, stay or vacate any Financing Order or to challenge this Agreement or any of the Other Documents. | |
| | (k)    The filing by the Debtor of, or entry of an order approving, a motion for dismissal of the Chapter 11 Case, conversion of the Chapter 11 Case to a chapter 7 case, or the appointment of an interim or permanent chapter 11 trustee or of an examiner, receiver or responsible officer (in any such case with expanded powers relating to the operation of the Debtor's businesses (powers beyond those set forth in section 1106(a) and section 1106(b) of the Bankruptcy Code)) with respect to the Chapter 11 Case shall have occurred. | |
| | (l)    The filing of any motion by the Debtor seeking authority of the Bankruptcy Court to consummate a sale of assets of the Debtor (including any Collateral) having a value in excess of $200,000 outside the Ordinary Course of Business, without the prior written consent of the Lenders. | |
| | (m)    The institution of any judicial proceeding by the Debtor or any official committee appointed in the Chapter 11 Case, or consent by Borrower to any such judicial proceeding filed by any other person, seeking to challenge the validity of this Agreement or any Other Document, or the applicability, priority or enforceability of the same, or which seeks to void, avoid, limit, subordinate or otherwise adversely affect any security interest created by or granted under the Financing Orders, this Agreement or the Other Documents or any payment made pursuant thereto. | |
| | **(n)    The commencement of a suit or action against any Lenders by or on behalf of the** | |

12

| Required Disclosures | Summary of Material Terms | Location of Provision in Relevant Document(s) |
|---|---|---|
| | Borrower or its bankruptcy estate. | |
| | (o)     Except as provided in the Financing Orders, the filing by the Debtor of a motion, application or other petition to effect or consent to any order of the Bankruptcy Court to obtain credit or incur Indebtedness that is: (i) secured by a lien on all or any portion of the Collateral which is equal or senior to any lien in favor of the Lenders described in this Agreement or the Other Documents securing the Obligations, or (ii) entitled to administrative priority status which is equal or senior to the claims of the Lenders (other than the GVI Claim and the Carve-Out). | |
| | **(p)     Subject to entry of the Final Financing Order, the assertion of any claim arising under Section 506(c) of the Bankruptcy Code against Lenders or any of the Collateral or the commencement of actions adverse to either Lenders or its respective rights and remedies under this Agreement or any Bankruptcy Court order.** | |
| | (q)     The Borrower has failed to comply with any covenant or other obligation contained in Section 6.7 of the DIP Agreement. | |
| **Carve-Out** | The Carve-Out includes:  (i) all unpaid fees required to be paid by the Borrower to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under 28 U.S.C. § 1930(a) plus interest pursuant to 31 U.S.C. § 3717; (ii) all reasonable and documented fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $100,000; (iii) to the extent allowed at any time, all accrued and unpaid reasonable and documented fees, disbursements, costs, and expenses incurred at any time before or on the first business day following delivery by the Lenders of a Carve Out Trigger Notice  by any professionals or professional firms retained by the Borrower or any Committee, whether allowed by the Bankruptcy Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) after the first business day following delivery by the Lenders of the Carve Out Trigger Notice, to the extent allowed at any time, | Definitions |

13

| Required Disclosures | Summary of Material Terms | Location of Provision in Relevant Document(s) |
|---|---|---|
| | all reasonable and documented unpaid fees, disbursements, costs, and expenses incurred by professionals or professional firms retained by the Borrower or any Committee in an aggregate amount not to exceed $1,000,000. | |
| **506(c) Waiver** | **In exchange for the DIP Lenders' agreement to subordinate the DIP Liens and the DIP Superpriority Claim to the GVI Secured Claim, the Permitted Encumbrances, and the Carve-Out, subject to the entry of a Final Order, the DIP Lenders shall receive (i) a waiver of any "equities of the case" claims under Section 552(b) of the Bankruptcy Code and (ii) subject to the Carve-Out, a waiver of the provisions of Section 506(c) of the Bankruptcy Code.** | Proposed Interim Order |
| **Challenge Period** | **The various stipulations and waivers contained in the Interim Order shall be without prejudice to the rights of the Committee (if appointed) to seek to disallow the Prepetition Indebtedness or to pursue any claims or seek appropriate remedies against the Promissory Note Lenders in connection with the Promissory Notes.  The stipulations, findings, representations and releases contained in the Interim Order and the DIP Documents shall be binding upon all parties-in-interest, any trustee appointed in these cases and any Committee (each, a "<u>Challenge Party</u>"), unless and solely to the extent that (i) a Challenge Party commences a Challenge (defined below) prior to the expiration of the Challenge Period (defined below) and (ii) the Court rules in favor of the plaintiff in any such timely filed Challenge.**<br><br>**For purposes of the Interim Order:  (A) "Challenge" means that a party in interest that has been granted standing by the Court, must commence, as appropriate, a contested matter or adversary proceeding, raising an objection, claim, suit or other  challenge, including, without limitation, a claim in the nature of setoff, counterclaim or defense against any of the Promissory Note Lenders on behalf of the Debtor's estate, or to object to or to challenge the stipulations, findings or Debtor's Stipulations set forth herein; and (B) "Challenge Period" means (i) with respect to any party-in-interest other than the Committee, the period from the Petition Date until the date that is forty-five** | Proposed Interim Order |

| Required Disclosures | Summary of Material Terms | Location of Provision in Relevant Document(s) |
|---|---|---|
| | (45) calendar days after the entry of this Interim Order and (ii) with respect to the Committee, sixty (60) calendar days from the date the U.S. Trustee appoints the Committee.<br><br>Upon the expiration of the Challenge Period without the filing of a Challenge (the "Challenge Period Termination Date"): (A) any and all such Challenges and objections by any party (including, without limitation, any Committee, any Chapter 11 trustee, and/or any examiner or other estate representative appointed in this Case, and any Chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred; (B) all matters not subject to the Challenge, and all findings, Debtor's Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to each of the Promissory Note Lenders' claims and interests shall be of full force and effect and forever binding upon the Debtor, the Debtor's estate, and all creditors, interest holders, and other parties in interest in this Chapter 11 Case and any Successor Case; and (C) any and all claims or causes of action against the Debtor or the Promissory Note Lenders relating in any way to the Debtor or Promissory Notes shall be forever waived and released by the Debtor, the Debtor's estate, and all creditors, interest holders and other parties in interest in this Case and any Successor Case. | |
| **Releases in Favor of Lenders** | Subject to entry of the Final Order, the Debtor waives any and all actions related to, and hereby release, each of (a) the DIP Lenders solely in their capacity as such and (b) each of their respective shareholders, affiliates, parents, subsidiaries, controlling persons, directors, agents, officers, successors, assigns, directors, managers, principals, officers, employees, agents, investors, funds, advisors, attorneys, professionals, representatives, accountants, investment bankers, and consultants, each in their sole respective capacity as such (each such person or entity identified in sub-clauses (a) and (b) hereof, a "<u>Released Party</u>" and, collectively, the "<u>Released Parties</u>") from any and all claims, obligations, rights, suits, damages, causes of action, any Challenge, remedies, and liabilities whatsoever, including | Proposed Interim Order |

| Required Disclosures | Summary of Material Terms | Location of Provision in Relevant Document(s) |
|---|---|---|
| | any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor or its estate would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any claim or interest or other entity, whether groundless or otherwise, arising prior to the Petition Date to the extent arising out of or related to the DIP Documents or the transactions contemplated thereby. | |
| **Relief from Automatic Stay** | On the fifth business day after the date the DIP Lenders file a notice of an Event of Default on the docket of the Debtor's Chapter 11 Case (such period, the "<u>Default Notice Period</u>"), the automatic stay under section 362 of the Bankruptcy Code will be automatically lifted without further order of this Court to allow the DIP Lenders to take any and all actions permitted by law, as if no case were pending under the Bankruptcy Code.  Unless otherwise ordered by the Court, the sole basis on which the Debtor can contest the automatic lifting of the automatic stay pursuant to this paragraph is on the grounds that an Event of Default has not occurred, and the Debtor and other parties-in-interest may request an expedited hearing on any motion seeking such a finding, and the DIP Lenders shall consent to such expedited hearing. | Proposed Interim Order |

16

## THE DIP FINANCING SHOULD BE APPROVED

16.     It is essential for the Debtor to immediately obtain access to financing to continue

its operations, fund its chapter 11 case, and finance the sale and marketing process for the

Debtor's assets.  The Debtor's ability to fund its ongoing obligations depends heavily upon the

expeditious approval of the DIP Facility.  As set forth below, the Debtor has satisfied the

Bankruptcy Code requirements for approval of the DIP Facility.

**A.     The DIP Facility Should be Approved
         Under Section 364 of the Bankruptcy Code**

17.     The Debtor proposes to obtain financing under the DIP Facility by providing

superpriority administrative expense claims, security interests, and other liens as set forth above

pursuant to section 364(c) of the Bankruptcy Code.  Section 364(c) of the Bankruptcy Code

provides that if a debtor is unable to obtain unsecured credit allowable as an administrative

expense, the court may authorize the debtor to obtain credit or incur debt (a) on a superpriority

administrative basis, (b) secured by a lien on the debtor's unencumbered assets, or (c) secured by

a junior lien on the debtor's already encumbered assets, or a combination of the foregoing.  *See*

11 U.S.C. § 364(c).[7]

18.     The statutory requirement for obtaining post-petition credit under section 364(c)

---

[7]     Section 364(c) of the Bankruptcy Code provides as follows:

(c)     If the trustee is unable to obtain unsecured credit allowable under
section 503(b)(1) of this title as an administrative expense, the
court, after notice and a hearing, may authorize the obtaining of
credit or the incurring of debt—

(1) with priority over any or all administrative expenses of
the kind specified in section 503(b) or 507(b) of this
title;

(2) secured by a lien on property of the estate that is not
otherwise subject to a lien; or

(3) secured by a junior lien on property of the estate that is
subject to a lien. 11 U.S.C. § 364(c).

11 U.S.C. § 364(c).

17

of the Bankruptcy Code is a finding, made after notice and hearing, that the debtor in possession is "unable to obtain unsecured credit allowable under § 503(b)(1) of [the Bankruptcy Code] as an administrative expense."  11 U.S.C. § 364(c); *see also In re Crouse Grp., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (debtor seeking secured credit under section 364(c) of the Bankruptcy Code must prove that it was unable to obtain unsecured credit pursuant to section 364(b) of the Bankruptcy Code), *modified on other grounds*, 75 B.R. 553 (Bankr. E.D. Pa. 1987).

19.    Courts have articulated a three-part test to determine whether a debtor may obtain financing under section 364(c) of the Bankruptcy Code:

> (i)    the debtor is unable to obtain unsecured credit under section 364(b) (*i.e.*, by granting a lender administrative expense priority);

> (ii)    the credit transaction is necessary to preserve the assets of the estate; and

> (iii)    the terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender.

*See In re Los Angeles Dodgers LLC*, 457 B.R. 308, 312-13 (Bankr. D. Del. 2011) (noting these three factors in considering proposed postpetition financing) (citations omitted); *In re Aqua Assocs.*, 123 B.R. 192, 195-96 (Bankr. E.D. Pa. 1991) (applying the above test).  As described in more detail below, each of the elements is satisfied here.

**(i)    The Debtor was Unable to Obtain Necessary
        Postpetition Financing on an Unsecured Basis**

20.    To show that the credit required is not obtainable on an unsecured basis, a debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of sections 364(c) of the Bankruptcy Code.  *Bray v. Shenandoah Fed. Sav. & Loan Ass'n*, 789 F.2d 1085, 1088 (4th Cir. 1986).  Thus, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable."  *Id*.  Moreover, where few lenders are likely to be able and willing to extend the necessary credit to the debtor,

18

"it would be unrealistic and unnecessary to require [the debtor] to conduct . . . an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom, Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989).

21.     As detailed above and in the Langbein Declaration, in the months before the commencement of this chapter 11 case, the Debtor, with the assistance of its advisors, determined that it would not be able to obtain financing from a third-party lender on an secured, administrative or unsecured basis.  Except for the DIP Facility from the Lenders, the Debtor does not believe that another party would be willing to provide the Debtor with *any* post-petition financing, let alone financing on the favorable terms provided in the DIP Facility, due to, among other things, the lack of significant business operations, the absence of material unencumbered assets to serve as collateral for additional financing, and the contingencies associated with the sale of the Debtor's assets.  Accordingly, in light of the Debtor's imminent liquidity needs, the Debtor, in the reasonable exercise of its business judgment, with the assistance of its advisors, determined that the DIP Facility is the only viable financing option available at this time.

    **(ii)     The DIP Facility is Necessary to Preserve
         and Protect the Assets of the Debtor's Estate**

22.     It is essential that the Debtor immediately obtain the financing necessary to preserve and protect the value of its estate.  As noted in the Hill Certification and the Langbein Declaration, the Debtor needs additional funding to continue to operate, pay ordinary expenses, and fund the costs of the chapter 11 case, all of which will protect the value of the Debtor's estate.  Moreover, the additional liquidity provided by the DIP Facility will permit the Debtor to further market and consummate the Sale Transaction, which will yield the maximum available price for the Debtor's assets.  Moreover, without the DIP Facility, the Debtor could fall out of compliance with its current environmental and regulatory obligations and thereby cause a

potential purchaser to reduce its purchase price for the Debtor's assets.  Based on the foregoing,

the Debtor submits that the DIP Facility is necessary to protect the value of the Debtor's estate.

> **(iii)** **The Terms of the DIP Facility are Entirely Fair, Reasonable
> and Appropriate Under the Circumstances**

23.     The terms and conditions of the DIP Facility must be judged by a bankruptcy

court taking into account the debtor's financial circumstances and alternatives.  *In re W. Pac.*

*Airlines, Inc.*, 223 B.R. 567, 572 (Bankr. D. Colo. 1997) (financing facility was approved

because it fairly reflected the debtor's "situation and the market in which the debtor is forced to

participate as a result of its financial circumstances and the deadlines it faces").  Judged from that

perspective, the terms of the DIP Facility are entirely fair and reasonable under the

circumstances.

24.     As set forth in the Langbein Declaration, given the Debtor's inability to obtain

third-party financing, the Debtor believes that the financial terms of the DIP Agreement are

reasonable and appropriate under the circumstances.  Importantly, the Lenders have agreed to

provide financing that is subordinate to the GVI Secured Claim, which avoids a potential

"priming" dispute with the GVI at the outset of this chapter 11 case.  Additionally, among other

things, the DIP Facility does not include any fees or original issue discount that would reduce the

amount actually available to the Debtor.  In addition, the costs of the DIP Facility are below

market for a loan of this type and size, even if the DIP Facility were to be provided to the Debtor

on a senior secured basis instead of on a subordinated basis.  Finally, the milestones set forth in

the DIP Agreement provide a reasonable timeframe during which the Debtor must complete the

sale and marketing process for the Debtor's assets and consummation of the sale.

25.     The Debtor believes that the terms and conditions of the DIP Facility are entirely

fair under the circumstances and could not be improved upon or replicated in the marketplace.

In the absence of immediate access to the DIP Facility from the Lenders, the Debtor will be unable to bear the costs of the chapter 11 case or complete the proposed sale of its assets. In addition, the DIP Facility does not directly or indirectly deprive the Debtor or other parties in interest of possible rights and powers by restricting the services for which professionals may be paid in this case. *See In re Tenney Vill. Co.*, 104 B.R. 562, 568-69 (Bankr. D.N.H. 1989) (denying approval of a financing facility that, among other things, did not provide a carve-out for professional fees). Instead, the proposed DIP Facility and the proposed Interim Order provide that the security interests and superpriority administrative expense claims granted to the Lenders are subject to the Carve-Out, which provides for (a) all unpaid fees of the Clerk of the Court and the Office of the United States Trustee, (b) all reasonable and documented fees and expenses incurred by a chapter 7 trustee in an amount not to exceed $100,000, and (c) fees and expenses for any professional retained pursuant to sections 327, 328 or 1103 of the Bankruptcy Code by the Debtor and any statutory committee of unsecured creditors, subject to a cap of $1,000,000 in the aggregate subsequent to the delivery of a Carve-Out Trigger Notice (as defined in the DIP Agreement). Additionally, the Carve-Out protects against administrative insolvency during the course of the case by ensuring that assets remain for the payment of United States Trustee fees and professional fees of the Debtor and any official committee of unsecured creditors, notwithstanding the grant of superpriority and administrative liens and claims under the DIP Facility. Thus, the Debtor submits that entry into the DIP Agreement on the terms and conditions set forth therein represents a prudent exercise of its business judgment and should be approved.

26.     For these reasons, the Debtor believes that the terms of the DIP Agreement—the only source of available funding—are entirely fair and reasonable in light of the circumstances of

this case, and will prevent the immediate and irreparable harm that would result from the

Debtor's inability to continue its operations and pursue the sale of the Debtor's assets.

> **(iv)**     **Financing Pursuant to Bankruptcy Code**
> **Section 364(d) is Appropriate**

27.     If a debtor is unable to obtain credit solely under the provisions of Bankruptcy

Code section 364(c), the debtor may obtain credit by a senior or equal lien on property of the

estate that is already subject to a lien. *See* 11 U.S.C. § 364(d). The Bankruptcy Code authorizes

a debtor in possession to grant superpriority senior secured priming liens if: (i) the debtor is

unable to obtain financing without granting such liens, and (ii) the interests of the secured

creditors whose liens are being primed by the postpetition financing are adequately protected.

*See* 11 U.S.C. §§ 364(d)(1)(A) & (B).

28.     As described in the Langbein Declaration, except for the DIP Facility from the

Lenders, the Debtor does not believe that another party would be willing to provide the Debtor

with *any* post-petition financing, let alone financing on an unsecured basis. In addition, although

the Debtor is not aware of any prepetition secured claims that are being primed by the DIP Liens,

the Debtor submits that holders of such secured claims are adequately protected by the proposed

Sale Transaction. Based on the foregoing, and in light of the unavailability of financing from

another party, the Debtor believes that, to the extent any prepetition liens are primed, the grant of

such priming liens to the Lenders is appropriate under the circumstances.

> **B.**     **Entry into the DIP Agreement Reflects**
> **an Exercise of the Debtor's Reasonable Business Judgment**

29.     After consideration of its strategic and financing options, the Debtor concluded in

its reasonable business judgment that the DIP Facility is the best option available under the

circumstances. Bankruptcy courts routinely defer to a debtor's business judgment on most

business decisions, including the decision to borrow money, unless such decision is arbitrary and

22

capricious.  *See In re YL West 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) (stating that "[c]ourts have generally deferred to a debtor's business judgment in granting section 364 financing"); *Trans World Airlines, Inc. v. Travellers Int'l AG*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that the interim loan, receivables facility and asset-based facility were approved because they "reflect[ed] sound and prudent business judgment on the part of TWA . . . [were] reasonable under the circumstances and in the best interest of TWA and its creditors"); *cf. In re Filene's Basement, LLC*, 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) (stating "[t]ransactions under § 363 must be based upon the sound business judgment of the debtor or trustee.").  In fact, "[m]ore exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

30.     Ultimately, after consultation with its advisors and consideration of all financing options, the Debtor determined that the financing provided under the DIP Facility was the only financing available.  Moreover, the Debtor weighed heavily the fact that failure to obtain funding would prevent the Debtor from completing the proposed sale transaction, which would cause harm to the Debtor's estate and its stakeholders.  *See In re Farmland Indus., Inc.*, 294 B.R. 855, 879 (Bankr. W.D. Mo. 2003) (approving postpetition financing that "gives the Debtors sufficient time to market and sell several of their major assets so as to pay down the debt to the Financing Parties and then reorganize around their remaining core assets.").  Accordingly, the Court should grant the Motion, allow the Debtor to enter into the DIP Facility Documents, and allow the Debtor to obtain the funds available under the DIP Facility as described above, pursuant to section 364(c) of the Bankruptcy Code.

## THE AUTOMATIC STAY SHOULD BE MODIFIED

31.     The Debtor seeks a modification of the automatic stay imposed by section 362 of the Bankruptcy Code, to the extent applicable and necessary, to permit the parties to implement the terms of the DIP Orders and the DIP Agreement.  Such stay modification provisions are customary in financings such as the DIP Facility and the Debtor believes they are reasonable under the circumstances.

## INTERIM APPROVAL SHOULD BE GRANTED

32.     Bankruptcy Rule 4001(c) provides that a final hearing on a motion to obtain credit pursuant to section 364 of the Bankruptcy Code may not be commenced earlier than fifteen days after the service of such motion.  Fed. R. Bankr. P. 4001(c).  Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.  Courts apply the business judgment standard applicable to other business decisions when considering whether to conduct a preliminary hearing.  *See, e.g.*, *In re Simasko*, 47 B.R. 444, 449 (Bankr. D. Colo. 1985).  After the 14-day period, the request for financing is not limited to those amounts necessary to prevent disruption of the debtor's business, and the debtor is entitled to borrow those amounts that it believes prudent in the operation of its business.  *See, e.g., Id.*

33.     Pursuant to Bankruptcy Rule 4001(c) and Local Rule 4001-1, the Debtor requests that the Court hold and conduct an Interim Hearing to consider entry of the Interim Order authorizing the Debtor to obtain funds in an amount not to exceed $10 million pending entry of the Final Order.  This relief will enable the Debtor to preserve and maximize the value of its assets, and therefore, avoid immediate and irreparable harm and prejudice to its estate and all stakeholders, pending the Final Hearing.  The Debtor represents that expedited notice of the Interim Hearing and service of the Motion was completed on the necessary parties at least 48

24

hours prior to the Interim Hearing such that a preliminary hearing is appropriate before the Court.

## ESTABLISHING NOTICE PROCEDURES AND SCHEDULING FINAL HEARING

34.    The Debtor respectfully requests that the Court schedule the Final Hearing no later than 21 days after the entry of the Interim Order and authorize the Debtor to mail copies of the Motion and signed Interim Order, which fixes the time, date and manner for the filing of objections, to:  (a) the Office of the United States Trustee for the District of the U.S. Virgin Islands; (b) the Internal Revenue Service; (c) the Environmental Protection Agency; (d) the parties included in the Debtor's list of twenty (20) largest unsecured creditors; (e) the GVI; (f) the Pension Benefit Guaranty Corporation; (g) the Securities and Exchange Commission; (h) the United States Attorney's Office for the District of the Virgin Islands; (i) the Lenders; and (j) counsel to the Lenders.

## WAIVER OF BANKRUPTCY RULE 6004(H)

35.    To the extent that any aspect of the relief sought herein constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtor seeks a waiver of the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As described above, the relief that the Debtor seeks in this Motion is immediately necessary in order for the Debtor to be able to continue to operate its business and preserve the value of its estate.  The Debtor thus submits that the requested waiver is appropriate.

## NOTICE

36.    Notice of this Motion will be given to the following parties, or in lieu thereof, to their counsel: (a) the Office of the United States Trustee for the District of the U.S. Virgin Islands; (b) the Internal Revenue Service; (c) the Environmental Protection Agency; (d) the parties included in the Debtor's list of twenty (20) largest unsecured creditors; (e) the GVI; (f)

the Pension Benefit Guaranty Corporation; (g) the Securities and Exchange Commission; (h) the

United States Attorney's Office for the District of the Virgin Islands; (i) the Lenders; and

(j) counsel to the Lenders.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court (a) enter an Interim Order

substantially in the form attached hereto as **Exhibit A**; (b) set a date for a hearing to consider

entry of the Final Order, and (c) grant any other and further relief that the Court deems just and

proper.

Dated:  September 15, 2015
      St. Thomas, U.S. Virgin Islands

/s/ Richard H. Dollison

Richard H. Dollison (VI Bar No. 502)
LAW OFFICES OF RICHARD H. DOLLISON, P.C.
48 Dronningens Gade, Suite 2C
St. Thomas, U.S. Virgin Islands 00802
Telephone: (340) 774-7044
Facsimile: (340) 774-7045

-and-

Lorenzo Marinuzzi
Jennifer L. Marines
Daniel J. Harris
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Proposed Counsel for Debtor
and Debtor-in-Possession*