## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### BANKRUPTCY DIVISION
### ST. CROIX, VIRGIN ISLANDS

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| HOVENSA L.L.C., | ) |
| | ) Case No. 1:15-bk-10003-MFW |
| Debtor. | ) |
| | ) |

### INTERIM ORDER (A) APPROVING POSTPETITION FINANCING, (B) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (C) MODIFYING THE AUTOMATIC STAY, AND (D) SCHEDULING A FINAL HEARING

Upon the motion (the "Motion") of HOVENSA L.L.C. (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 and 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of the Virgin Islands (the "Local Rules"), seeking entry of an interim order (this "Interim Order") providing for, among other things:

    (i)       this Court's authorization, pursuant to sections 105(a), 361, 362, 363, and 364(c), (d), and (e) of the Bankruptcy Code, and Bankruptcy Rules 2002, 4001 and 9014 for the Debtor, in its capacity as borrower (the "Borrower") to enter into a debtor-in-possession financing agreement (the "DIP Agreement"),[1] substantially in the form attached hereto as **Exhibit 1** with the lenders party thereto (collectively, the "DIP

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms as set forth in the DIP Agreement.

Lenders"), to obtain cash advances and other extensions of credit on a first-priority secured basis, in an aggregate amount not to exceed $40 million (the "DIP Facility", and the loans under such facility, the "DIP Loans"), on the terms of the DIP Agreement (together with any and all documents, agreements, and instruments delivered pursuant thereto or executed and filed in connection therewith, as may be amended hereafter from time to time, including without limitation, the Budget (defined below), collectively, the "DIP Documents");

(ii)       this Court's ordering, pursuant to sections 364(c)(1), (2), (3), and 364(d) of the Bankruptcy Code:

(a)       that the obligations of the Debtor under the DIP Documents (collectively, the "DIP Obligations") are secured under sections 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code by an automatically fully perfected, valid, enforceable, unavoidable, and first-priority security interest and lien on all of the Debtor's assets and all "property of the estate" (within the meaning of the Bankruptcy Code), of any kind or nature whatsoever, including all real and personal property, tangible or intangible or mixed whether now owned or existing or hereafter acquired or created, subject only to: (x) the First Priority Mortgage, dated as of May 28, 2014, granted by the Debtor in favor of the Government of the United States Virgin Islands ("GVI") and solely to the extent of obligations thereunder outstanding immediately prior to the Petition Date (as defined below) of the Chapter 11 Case (to the extent such claim is valid, the "GVI Secured Claim"), (y) the Permitted Encumbrances, and (z) payment of the Carve-Out (as defined below);

2

(b)    the DIP Lenders are granted an allowed superpriority administrative expense claim in the Debtor's bankruptcy case (and against the Debtor's estate created pursuant to section 541 of the Bankruptcy Code) pursuant to section 364(c)(1) of the Bankruptcy Code having priority over all administrative expenses of the kind specified in or arising under any section of the Bankruptcy Code (including, without limitation, sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c) or 726 thereof), subject only to the GVI Secured Claim, Permitted Encumbrances and payment of the Carve-Out on the terms and conditions set forth herein;

(iii)    this Court's authorization of a modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Interim Order, as set forth herein;

(iv)    this Court's scheduling, pursuant to Bankruptcy Rule 4001(c)(2) an interim hearing (the "Interim Hearing") to consider entry of an interim order in the form hereof (the "Interim Order"), which, among other things, (i) approves, on an interim basis, the postpetition financing to be made pursuant to the DIP Documents and (ii) authorizes the Debtor to obtain the DIP Loans on an interim basis, in accordance with the DIP Documents, and following entry of this Interim Order, in the aggregate principal amount of up to $10 million (the "Interim DIP Facility Commitment") in accordance with the budget annexed hereto as **Exhibit 2** (as may be modified, amended, restated or supplemented with the consent of the DIP Lenders, each in their sole discretion on the terms set forth in the DIP Documents and the terms hereof, the "Budget");

3

(v)        this Court's scheduling, pursuant to Bankruptcy Rule 4001(c)(2), of a final hearing (the "Final Hearing") to consider entry of an order approving the relief requested in the Motion on a final basis (the "Final Order"), which, among other things, (i) approves, on a final basis, the postpetition financing to be made pursuant to the DIP Documents, and (ii) authorizes the Debtor to obtain the DIP Loans on a final basis, in accordance with the DIP Documents and following entry of a Final Order, in the aggregate principal amount of up to $40 million in accordance with the Budget, and (iii) approves the form of notice with respect to the Final Hearing; and

The Interim Hearing having been held and concluded on [September 17, 2015]; and notice of the Motion and Interim Hearing having been given; and based upon all of the pleadings filed with the Court, the evidence presented at the Interim Hearing and the entire record herein; and the Court having heard and resolved or overruled all objections to the interim relief requested in the Motion; and the Court having noted the appearances of all parties in interest; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, and its creditors; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTOR, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW[2]:

A.        *Petition Date*.  On September 15, 2015 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States District Court of the Virgin Islands – Bankruptcy Division (the "Court"), commencing this Chapter 11 Case.

---

[2]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

4

B.    _Debtor-in-Possession_.  The Debtor continues to operate its business and property as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Chapter 11 Case.

C.    _Jurisdiction and Venue_.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for these cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    _Committee Formation_.  As of the date hereof, the United States Trustee (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors (the "Committee") in this Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code.

E.    _GVI Secured Claim_.  The Debtor and the GVI are parties to that certain First Priority Mortgage, dated as of May 28, 2014 (the "First Priority Mortgage").  The First Priority Mortgage was issued in connection with that certain settlement agreement between the Debtor and the GVI dated May 28, 2014 (the "DPNR Settlement Agreement"). The First Priority Mortgage secures the $40 million claim of the GVI under the DPNR Settlement Agreement and grants a first priority lien on: (a) the Debtor's real property as described on Exhibit A to the First Priority Mortgage (the "Premises"); (b) all appliances, fixtures, equipment, buildings, among other things, located on the Premises; (c) the Debtor's rights, title, and interest in any agreements, leases, contracts, among other things, relating to the Premises; (d) the Debtor's rights, title, and interest in sales contracts, installment sales contracts, and any other agreements relating to the Premises; and (e) all insurance proceeds.

F.    *Debtor's Stipulations*.    Subject only to the rights of parties in interest as set forth in paragraph 31 hereof, after consultation with their attorneys and financial advisors, the Debtor (on behalf of, and for itself) admits, stipulates, acknowledges, and agrees to the following (collectively, the "Debtor's Stipulations")

(i)    *2012 Promissory Notes*.    The Debtor issued two separate promissory notes, dated April 1, 2012, each in the principal amount of $811 million, to Hess Oil Virgin Islands Corp. ("HOVIC") and Petróleo de Venezuela, S.A. ("PPSA") (such notes, the "2012 Promissory Notes"). The 2012 Promissory Notes each matured on April 1, 2013, but both remain unpaid. As of the Petition Date, a total of approximately $1.864 billion (inclusive of interest) is outstanding under the 2012 Promissory Notes (the "2012 Promissory Note Indebtedness").

(ii)    *2015 Promissory Notes*.    The Debtor issued two separate promissory notes, dated July 8, 2015, each in the principal amount of $5 million, to HOVIC and PDVSA V.I., Inc. ("PDV-VI" and, collectively with HOVIC and PPSA, the "Promissory Note Lenders") (such notes, the "2015 Promissory Notes" and together with the 2012 Promissory Notes, the "Promissory Notes"). The 2015 Promissory Notes each mature on December 31, 2015. As of the Petition Date, a total of approximately $10 million is outstanding under the 2015 Promissory Notes (together with the 2012 Promissory Note Indebtedness, collectively, the "Prepetition Indebtedness").

(iii)    *Validity, Priority and Amount of Pre-Petition Indebtedness and Liens.*    As of the Petition Date, (a) the Promissory Notes are valid and enforceable obligations in the aggregate liquidated amounts of $10 million with respect to the 2015 Promissory Notes and $1.864 billion with respect to the 2012 Promissory Notes; (b) the Prepetition

Indebtedness constitutes legal, valid, binding, and unavoidable obligations of the Debtor, enforceable in accordance with the terms and conditions of the Promissory Notes; and (c) no offsets, challenges, defenses, claims, or counterclaims of any kind or any nature to any of the Prepetition Indebtedness exists, and no portion of the obligations under the Promissory Notes is subject to avoidance, recharacterization, disallowance, or subordination pursuant to the Bankruptcy Code or other applicable law.

(iv)    *Release of Claims.*  Subject to entry of the Final Order, the Debtor and its estate shall be deemed to have (a) waived, discharged and released the Promissory Note Lenders, solely in their capacity as such, together with the Promissory Note Lenders' respective shareholders, affiliates, parents, subsidiaries, controlling persons, directors, agents, officers, successors, assigns, directors, managers, principals, officers, employees, agents, investors, funds, advisors, attorneys, professionals, representatives, accountants, investment bankers, and consultants, each in their sole respective capacities as such (all of the foregoing, the "Prepetition Lender Releasees") of any and all "claims" (as defined in the Bankruptcy Code), offsets, defenses, objections, challenges, causes of action, and/or choses in action, or other claims arising under or pursuant to the Bankruptcy Code or under any other applicable law against any and all of the Prepetition Lender Releasees, whether at law or in equity, arising under or relating to the Promissory Notes (or the transactions contemplated thereunder), and (b) waived, discharged and released any offsets, defenses, objections, challenges, causes of action, and/or choses in action with respect to the Prepetition Indebtedness, including without limitation, actions related to recharacterization, subordination, avoidance, and any right or basis to challenge or object to the amount, validity or enforceability of the Prepetition Indebtedness.

G.    *Findings Regarding the Postpetition Financing.*

(i)    *Request for Postpetition Financing.*  The Debtor seeks authority on an interim basis to access and use the Interim DIP Facility Commitment:  (a) to pay costs and expenses in connection with the DIP Facility and the Debtor's Chapter 11 Case, or (b) to provide ongoing working capital financing for the Debtor and provide financing for general corporate purposes, in each case subject to compliance with the terms, conditions and amounts set forth in the Budget (including, without limitation Court-approved professional fees other than "success," "exit" or other similar fees for such professionals, and other administrative fees arising in the Debtor's Chapter 11 Case).

(ii)    *Need for Postpetition Financing.*  The Debtor's need to obtain credit consistent with the terms of the DIP Documents as provided for herein is necessary to enable the Debtor to continue operations and the HOVENSA Sale and to administer and preserve the value of the Debtor's estate.  The ability of the Debtor to maintain business relationships with its vendors and suppliers, to pay its contractors, and otherwise to finance its operations requires the availability of working capital from the DIP Facility.  Without the ability to access the DIP Facility, the Debtor, its estate and its creditors would suffer immediate and irreparable harm.  The Debtor does not have sufficient available sources of working capital and financing to operate its business or maintain its property in the ordinary course of business without the DIP Facility.

(iii)    *No Credit Available on More Favorable Terms.*  Given its current financial condition, financing arrangements and capital structure, the Debtor is unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility.  The Debtor has been unable to obtain unsecured credit allowable under

section 503(b)(1) of the Bankruptcy Code as an administrative expense. Financing on a postpetition basis is not otherwise available without granting the DIP Lenders, (a) perfected security interests in and liens as provided in this Interim Order and the DIP Documents, (b) superpriority administrative claims as set forth in this Interim Order, and (c) the other provisions set forth in this Interim Order.

(iv)    *Cash Collateral.*  The Debtor does not possess any cash on hand that constitutes cash collateral.

(v)    *Adequacy of the Budget.*  As set forth in the DIP Documents, the Debtor has prepared and delivered the Budget to the DIP Lenders. The Budget has been thoroughly reviewed by the Debtor, its management, and its advisors. The Debtor, its management and its advisors believe the Budget and the estimate of administrative expenses due or accruing during the period covered by the DIP Facility were developed using reasonable assumptions.

H.    *Sections 506(c) and 552(b).*  In exchange for the DIP Lenders' agreement to subordinate the DIP Liens and the DIP Superpriority Claim to the GVI Secured Claim, the Permitted Encumbrances, and the Carve-Out, and subject to the entry of a Final Order, the DIP Lenders shall receive (i) a waiver of any "equities of the case" claims under Section 552(b) of the Bankruptcy Code and (ii) subject to the Carve-Out, a waiver of the provisions of Section 506(c) of the Bankruptcy Code.

I.    *Good Faith of the DIP Lenders.*

(i)    *Willingness to Provide Financing.*  The DIP Lenders have indicated a willingness to provide financing to the Debtor solely pursuant to the terms and conditions of this Interim Order and the DIP Documents including, without limitation: (a) the entry

by this Court of this Interim Order; (b) approval by this Court of the terms and conditions of the DIP Documents; and (c) entry of findings by this Court that such financing is essential to the Debtor's estate, that the DIP Lenders are extending credit to the Debtor pursuant to the DIP Documents in good faith, and that the DIP Lenders' claims, superpriority claims, security interests, liens, rights of repayment and other protections granted pursuant to this Interim Order and the DIP Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument, or reconsideration of this Interim Order, or any other order of this Court or any other court.

(ii)     *Business Judgment and Good Faith Pursuant to Section 364(e)*.   The terms and conditions of this Interim Order and the DIP Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtor under the circumstances, reflect the Debtor's exercise of prudent and sound business judgment consistent with its fiduciary duties, are supported by reasonably equivalent value and consideration and satisfy the "entire fairness" standard as to the Debtor.   The DIP Documents were negotiated in good faith and at arms' length among the Debtor and the DIP Lenders.  The credit to be extended under the DIP Facility shall be deemed to have been so allowed, advanced, made, used, and extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP Lenders are therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Interim Order.

J.     *Notice*.  Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtor, whether by facsimile, email, overnight courier, or hand

delivery, to certain parties-in-interest, including: (i) the Office of the United States Trustee for the District of the U.S. Virgin Islands; (ii) the Internal Revenue Service; (iii) the Environmental Protection Agency; (iv) the parties included in the Debtor's list of twenty (20) largest unsecured creditors; (v) the GVI; (vi) the Pension Benefit Guaranty Corporation; (vii) the Securities and Exchange Commission; (viii) the United States Attorney's Office for the District of the Virgin Islands; (ix) the DIP Lenders; and (x) counsel to the DIP Lenders. The parties have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the relief set forth in this Interim Order.

K.      *Immediate Entry of Interim Order*.  The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). The Motion and Interim Order comply with Local Bankruptcy Rules 4001-1 and 4001-2. The permission granted herein to enter into the DIP Documents and obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtor. This Court concludes that entry of this Interim Order is in the best interests of the Debtor's estate and creditors as its implementation will, among other things, allow for the financing necessary to sustain the operation of the Debtor's existing business and further enhance the Debtor's prospects for a successful restructuring.

Based upon the foregoing findings and conclusions, the Motion, and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.      Interim DIP Facility Commitment Approved.  The Debtor's entry into the DIP Documents, including the Interim DIP Facility Commitment, is authorized and approved, subject to the terms and conditions set forth in this Interim Order and the DIP Documents. This Interim Order shall be valid, binding on all parties in interest, and fully effective immediately

upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062 and 9014.

2.    **Objections Overruled.**  All objections to the Motion and/or entry of this Interim Order to the extent not withdrawn or resolved are hereby overruled.

**DIP Facility Authorization**

3.    **Authorization of the Interim DIP Facility Commitment and Entry Into the DIP Documents.**  The DIP Facility and the DIP Documents are hereby approved on an interim basis.  The Debtor is expressly and immediately authorized and empowered to incur the DIP Obligations and to obtain the DIP Loans in accordance with, and subject to, the terms of this Interim Order and the DIP Documents, and to deliver all instruments and documents that may be necessary or required for the performance by the Debtor under the DIP Documents and the creation and perfection of the DIP Liens (as defined below) provided for by this Interim Order and the DIP Documents.  The DIP Documents evidence valid and binding obligations of the Debtor, which shall be enforceable against the Debtor, its estate, and its creditors in accordance with the terms and conditions of the DIP Documents and this Interim Order.  The Debtor is hereby authorized and directed to perform all of its obligations under the DIP Documents, including, but not limited to paying, in accordance with this Interim Order, the principal, interest, fees, expenses and other amounts described in the DIP Documents, as such become due and without need to obtain further Court approval.  All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations, or otherwise, will be deposited and applied as required by this Interim Order and the DIP Documents.  All of the obligations described in the DIP Documents shall represent valid and binding obligations of the Debtor, enforceable against the Debtor and its estate in accordance with the terms of the DIP Documents.

4.      Authorization to Access the Interim DIP Facility Commitment.  During the period that this Interim Order is effective, and subject to the terms and conditions set forth in the DIP Documents and this Interim Order, and to prevent immediate and irreparable harm to the Debtor's estate, the Debtor is hereby authorized to access the Interim DIP Facility Commitment pursuant to the terms herein and the terms of the DIP Documents.

5.      DIP Obligations.  Upon entry of this Interim Order, the DIP Documents and this Interim Order shall constitute and evidence the validity and binding effect of the DIP Obligations, which DIP Obligations shall be enforceable against the Debtor, its estate, and any successors thereto, including any trustee appointed in these cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of this Chapter 11 Case, or in any other proceedings superseding or related to any of the foregoing (each, a "Successor Case").  Upon entry of this Interim Order, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by the Debtor to any of the DIP Lenders under the DIP Documents or this Interim Order, including all principal, accrued interest, costs, fees, expenses, and other amounts under the DIP Documents. The DIP Obligations shall be due and payable as provided for herein and in the DIP Documents.

6.      DIP Liens.  To secure the DIP Obligations, effective immediately upon entry of this Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Lenders are hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition first-priority security interests in and liens (collectively, the "DIP Liens") upon the Debtor's right, title, and interest in, to, and under all "property of the estate" including all personal property and other assets, whether now owned by or owing to, or hereafter acquired by or arising in favor of the Debtor (including

under any trade names, styles, or derivations thereof), and whether owned or consigned by or to, or leased from or to the Debtor and regardless of where located, and subject to entry of the Final Order, all Avoidance Actions (collectively, the "DIP Collateral"), as collateral security for the prompt and complete payment and performance when due (whether at the stated maturity, by acceleration, or otherwise) of the DIP Obligations. The DIP Collateral shall include (as each such term is defined in the DIP Documents): (a) all Receivables and all supporting obligations relating thereto; (b) all Equipment (including motor vehicles), goods, Inventory and fixtures; (c) all Instruments and chattel paper; (d) all Letter-of-Credit Rights (whether or not the letter of credit is evidenced by a writing); (e) all Securities Collateral; (f) all Investment Property; (g) all Intellectual Property; (h) the Commercial Tort Claims; (i) all General Intangibles; (j) all Depository Accounts; (k) all Supporting Obligations; (l) all books and records pertaining to the Collateral; (m) all present and future claims, rights, interests, assets and properties recovered by or on behalf of Debtor or any trustee of the Debtor (whether in this Chapter 11 Case or any subsequent case to which the Chapter 11 Case is converted), including, without limitation, upon entry of the Final Order,  all such property recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to, inter alia, sections 542, 545, 547, 548, 549, 550, 552 and 553 of the Bankruptcy Code, subject to the terms of the Financing Orders; (n) to the extent not covered by clauses (a) through (o) of this sentence, choses in action and all other personal property of the Debtor, whether tangible or intangible; (o) any and all real property (whether in fee simple, leasehold or otherwise) of the Debtor and any rights of the Debtor in connection with any real property; (p) to the extent that the Debtor has any rights thereon, funds contained in the Loan Funding Account; and (q) all Proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and

14

products of, each of the foregoing, and any and all Proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor from time to time with respect to any of the foregoing; *provided, however*, that the DIP Lien is subject solely to the GVI Secured Claim and the Carve-Out and, to the extent valid, not avoidable, and existing as of the Closing Date, the Permitted Encumbrances and the Carve-Out. If the DIP Lenders shall fail to have a perfected lien in any particular property or assets of the Debtor for any reason whatsoever, but the provisions of the DIP Documents (including, without limitation, all financing statements and other public filings relating to liens filed or recorded by the DIP Lenders against the Debtor) would be sufficient to create a perfected lien in any property or assets that the Debtor may receive upon the sale, lease, license, exchange, transfer or disposition of such particular property or assets, then all such proceeds of such particular property or assets shall be included in the DIP Collateral.

       7.     <u>DIP Lien Priority</u>. Subject only to the GVI Secured Claim, Permitted Encumbrances, and the Carve-Out, the DIP Liens securing the DIP Obligations shall be senior in priority to all other security interests in, liens on, or claims against the DIP Collateral. In entering into the DIP Documents, and as consideration therefor, the Debtor hereby agrees that until such time as all DIP Obligations are indefeasibly paid in full in cash and completely satisfied, and the commitments thereunder are terminated in accordance with the terms of the DIP Documents, the Debtor shall not in any way prime or seek to prime (or otherwise cause to be subordinated in any way) either the liens and security interests provided under this Interim Order to the DIP Lenders by offering a subsequent lender or any party in interest a superior or *pari passu* lien or claim pursuant to section 364(d) of the Bankruptcy Code, or otherwise, except with respect to the Carve-Out. The DIP Liens shall not be made subject to or *pari passu* with

any lien or security interest and shall be valid and enforceable against any trustee appointed in this Chapter 11 Case or any Successor Case, and/or upon the dismissal of any of this Chapter 11 Case or any Successor Case. Subject to entry of the Final Order, the DIP Liens shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code.

8.    DIP Superpriority Claim. The DIP Lenders are hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Chapter 11 Case against the Debtor, its estate in this Chapter 11 Case and any Successor Case, at any time existing or arising, of any kind or nature whatsoever, including administrative expenses of the kind specified in or arising under any section of the Bankruptcy Code (including, without limitation, sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b), 546(c) or 726 thereof), subject only to the GVI Secured Claim, Permitted Encumbrances and payment of the Carve-Out on the terms and conditions set forth herein), which shall at all times be senior to the rights of the Debtor and its estate, and any successor trustee or other estate representative (the "DIP Superpriority Claim").

9.    Extension of Credit. The DIP Lenders shall have no obligation to make any loan or advance unless all of the conditions precedent to the making of such extension of credit under the DIP Documents and this Interim Order have been satisfied in full or waived by the DIP Lenders each in their sole discretion.

10.    Use of DIP Facility Proceeds. From and after the Petition Date, the Debtor shall draw upon the DIP Facility and use advances of credit under the DIP Facility only pursuant to the terms herein and the terms of the DIP Documents, including, without limitation, the Budget.

11.    Amendment of the DIP Documents. The DIP Documents may, from time

16

to time, be amended, amended and restated, modified, or supplemented by the parties thereto without notice or a hearing if the amendment, amendment and restatement, modification, or supplement is (a) in accordance with the DIP Documents and (b) not prejudicial in any material respect to the rights of third parties; *provided, however*, that notwithstanding the foregoing, except for actions expressly permitted to be taken by the DIP Lenders, no amendment, modification, supplement, termination, or waiver of any provision of the DIP Documents, or any consent to any departure by the Debtor therefrom, shall in any event be effective without the express written consent of the DIP Lenders (it being understood that any necessary signatures may be on a document consenting to such amendment, modification, termination, or waiver) to the extent required by the DIP Documents.  Notwithstanding anything to the contrary in this Interim Order, the Budget may be amended as set forth in section 2.11(c) of the DIP Agreement.

12.    <u>Budget Compliance</u>.  The Debtor shall not use the proceeds of the DIP Facility in a manner or for a purpose other than those consistent with the DIP Documents, including, for avoidance of doubt, the permitted variances under section 7.24 of the DIP Agreement, and this Interim Order.  The Budget annexed to the DIP Agreement is hereby approved, and any modification to, or amendment or update of, the Budget shall be in form and substance acceptable to and approved by the DIP Lenders as provided in the DIP Documents. The Budget may be amended or modified in writing only with the written consent of the DIP Lenders, in their sole discretion.

13.    <u>Modification of Automatic Stay</u>.  The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified to permit:  (a) the Debtor to grant the DIP Liens and the DIP Superpriority Claim, and to perform such acts as the DIP Lenders may request in their sole discretion to assure the perfection and priority of the DIP Liens; (b) the

Debtor to incur all liabilities and obligations to the DIP Lenders as contemplated under the DIP Documents; (c) the Debtor to pay all amounts referred to, required under, in accordance with, and subject to this Interim Order; and (d) the implementation of the terms of this Interim Order.

14.   Perfection of DIP Liens.   This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or real property mortgage) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, or to entitle the DIP Lenders to the priorities granted herein.   Notwithstanding the foregoing, the DIP Lenders, is authorized to file, as it in its sole discretion deems necessary, such financing statements, mortgages, notices of lien, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens.   The Debtor is authorized to execute and promptly deliver to the DIP Lenders all such financing statements, mortgages, notices, and other documents as the DIP Lenders may reasonably request.   The DIP Lenders, in their discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instruments.

15.   Intentionally Omitted.

16.     Proceeds of Subsequent Financing.  Subject to entry of the Final Order, if the Debtor, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed in this Chapter 11 Case or any Successor Case, shall obtain credit or incur debt pursuant to section 364(b), (c), or (d) of the Bankruptcy Code at any time prior to the indefeasible payment in full of all DIP Obligations, the satisfaction of the DIP Superpriority Claims, and the termination of the DIP Lenders' obligations to extend credit under the DIP Facility, then all of the cash proceeds derived from such credit or debt shall immediately be turned over first to the DIP Lenders until the DIP Obligations have been satisfied in full and fully and indefeasibly paid.

17.     Maintenance of DIP Collateral.  Until the indefeasible payment in full of all DIP Obligations and the termination of the DIP Lenders' obligation to extend credit under the DIP Facility, the Debtor shall:  (a) insure the DIP Collateral as required under the DIP Facility; and (b) maintain the cash management system in effect as of the Petition Date, as modified by any order that may be entered by the Court in accordance with the DIP Documents.

18.     Insurance Policies.  Upon entry of this Interim Order, the DIP Lenders are, and are deemed to be, without any further action or notice (including endorsements), named as additional insureds and loss payees on each insurance policy maintained by the Debtor which in any way relates to the DIP Collateral.

19.     Disposition of DIP Collateral.  Except as expressly provided for in the DIP Documents, the Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral other than in the ordinary course of business without the prior written consent of the DIP Lenders.

20.    Events of Default.    The term "Event of Default" shall have the same meaning under this Interim Order as such term has under the DIP Documents.

21.    Rights and Remedies Upon Event of Default.    Unless otherwise ordered by the Court in accordance with the terms hereof and subject to entry of the Final Order, as of 12:00 a.m. prevailing Eastern Time on the fifth business day after the date the DIP Lenders file a notice of an Event of Default on the docket of the Debtor's Chapter 11 Case (such period, the "Default Notice Period"), the automatic stay under section 362 of the Bankruptcy Code will be automatically lifted without further order of this Court to allow the DIP Lenders to take any and all actions permitted by law, as if no case were pending under the Bankruptcy Code.  Unless otherwise ordered by the Court and subject to entry of the Final Order, the sole basis on which the Debtor can contest the automatic lifting of the automatic stay pursuant to this paragraph is on the grounds that an Event of Default has not occurred, and the Debtor and other parties-in-interest may request an expedited hearing on any motion seeking such a finding, and the DIP Lenders shall consent to such expedited hearing.  Nothing in this paragraph 21 shall limit the ability of the Debtor to use DIP Collateral to challenge whether an Event of Default has occurred and/or is continuing.  In the event the automatic stay is automatically lifted in accordance with this paragraph, the use of cash collateral, including accounts receivable, inventory, and the proceeds thereof, of the Debtor in which any of the DIP Lenders has an interest shall be prohibited.  In accordance with the DIP Agreement, and subject to any applicable grace periods, upon the occurrence of any Event of Default, the DIP Lenders may, without notice or demand, immediately suspend or terminate all or any portion of the DIP Lenders' obligations to make additional loans under the DIP Facility.  Upon the occurrence of an Event of Default, all loans under the DIP Facility shall become due and payable in accordance with the DIP Agreement.

20

Nothing herein shall be construed to limit or otherwise restrict the availability of the rights and remedies provided for in the DIP Agreement.

22.     Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Order.  Each of the DIP Lenders has acted in good faith in connection with this Interim Order, and their reliance on this Interim Order is in good faith.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, the DIP Lenders are entitled to fullest extent to the protections provided in section 364(e) of the Bankruptcy Code.  Any such modification, amendment, or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim or priority authorized or created hereby.  Any liens or claims granted to the DIP Lenders arising prior to the effective date of any such modification, amendment, or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges, and benefits granted herein.

23.     Expenses.  The Debtor is authorized and directed to pay all reasonable out-of-pocket expenses of the DIP Lenders in connection with the DIP Facility, to the extent provided in the DIP Documents including, without limitation, whether the DIP Documents are terminated by the DIP Lenders in accordance with the terms of the applicable DIP Documents. Payment of fees and expenses consistent with the terms of the DIP Documents shall not be subject to allowance by this Court, and parties entitled under the DIP Documents to receive such payment of fees and expenses shall not be required to comply with the U.S. Trustee fee guidelines.

24.   <u>DIP Facility Funds Held by the DIP Lenders</u>.  Subject to any and all rights of the DIP Lenders under this Interim Order or the DIP Documents with respect to any modification to, or relief from, the automatic stay of section 362 of the Bankruptcy Code granted in favor of the DIP Lenders, any and all proceeds of the DIP Facility held by the DIP Lenders shall be subject to the protections afforded by the automatic stay.

25.   <u>Released Parties</u>.  Subject to entry of the Final Order, the Debtor hereby waives any and all actions related to, and hereby release, each of (a) the DIP Lenders in their capacity as such and (b) each of their respective shareholders, affiliates, parents, subsidiaries, controlling persons, directors, agents, officers, successors, assigns, directors, managers, principals, officers, employees, agents, investors, funds, advisors, attorneys, professionals, representatives, accountants, investment bankers, and consultants, each in their respective capacity as such (each such person or entity identified in sub-clauses (a) and (b) of this paragraph 25, a "<u>Released Party</u>" and, collectively, the "<u>Released Parties</u>") from any and all claims, obligations, rights, suits, damages, causes of action, any Challenge (as defined herein), remedies, and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor or its estate would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any claim or interest or other entity, whether groundless or otherwise, arising prior to the Petition Date to the extent arising out of or related to the DIP Documents or the transactions contemplated thereby or by this Interim Order.

26.   <u>Proofs of Claim</u>.  The DIP Lenders shall not be required to file proofs of claim in this Chapter 11 Case or Successor Case for the DIP Obligations.  Any proof of claim

filed by the DIP Lenders shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by the DIP Lenders. Any order entered by this Court in relation to the establishment of a bar date in this Chapter 11 Case or Successor Case shall not apply to the DIP Lenders.

27.     Access to Collateral/No Landlord's Liens. Subject to applicable state law, notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Lenders, contained in this Interim Order or the DIP Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Documents and this Interim Order, upon written notice to the landlord of any leased premises that an Event of Default has occurred and is continuing under the DIP Documents, the DIP Lenders may, subject to any separate agreement by and between such landlord and the DIP Lenders (a "Separate Agreement"), enter upon any leased premises of the Debtor for the purpose of exercising any remedy with respect to DIP Collateral located thereon and, subject to any Separate Agreement, shall be entitled to all of the Debtor's rights and privileges as lessee under such lease without interference from such landlord; *provided, however*, that, subject to any such Separate Agreement, the DIP Lenders shall only pay rent of the Debtor that first accrues after the written notice referenced above and that is payable during the period of such occupancy by the DIP Lenders, calculated on a per diem basis. Nothing herein shall require the DIP Lenders to assume any lease as a condition to the rights afforded to the DIP Lenders in this paragraph.

28.     Carve-Out.

(a)     For the purposes of this Interim Order, the term "Carve-Out" means, collectively: (i) all unpaid fees required to be paid by the Debtor to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under 28 U.S.C. §

1930(a) plus interest pursuant to 31 U.S.C. § 3717; (ii) all reasonable and documented fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $100,000; (iii) to the extent allowed at any time, all accrued and unpaid reasonable and documented fees, disbursements, costs, and expenses incurred at any time before or on the first business day following delivery by the DIP Lenders of a Carve Out Trigger Notice (as defined below) by any professionals or professional firms retained by the Debtor or any Committee, whether allowed by the Bankruptcy Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) after the first business day following delivery by the DIP Lenders of the Carve Out Trigger Notice, to the extent allowed at any time, all reasonable and documented unpaid fees, disbursements, costs, and expenses incurred by professionals or professional firms retained by the Debtor or any Committee in an aggregate amount not to exceed $1,000,000 (the amount set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap"). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by the DIP Lenders (which delivery may be made via electronic mail) to the Debtor and its counsel, the U.S. Trustee, and lead counsel to any Committee, which notice may be delivered following the occurrence and continuance of an Event of Default, and stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)    The Carve-Out shall be senior to all liens and claims (including administrative and superpriority claims) securing the DIP Obligations, the Debtor's prepetition obligations, and all other liens or claims (including administrative and superpriority claims), including all other forms of adequate protection, liens or claims (including administrative and superpriority claims) securing the DIP Obligations and

prepetition obligations granted or recognized as valid, including the liens, security interests, and claims (including administrative and superpriority claims) granted herein or pursuant to the DIP Documents to the DIP Lenders.

29.     <u>Limitation on Investigation</u>.

(a)     No DIP Collateral, proceeds of the DIP Facility, any other amounts, or, subject to entry of the Final Order, a portion of the Carve-Out, may be used directly or indirectly by the Debtor, the Committee, if any, or any trustee or other estate representative appointed in this Chapter 11 Case or any Successor Case or any other person (or to pay any professional fees, disbursements, costs or expenses incurred in connection therewith) for any of the following actions or activities (the "<u>Proscribed Actions</u>"):

(i)     to seek authorization to obtain liens or security interests that are senior to, or on a parity with, the liens granted under this Interim Order;

(ii)     to seek authorization to obtain claims that are senior to, or on parity with, the DIP Superpriority Claim; or

(iii)     to investigate (including by way of examinations or discovery proceedings), prepare, assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of the DIP Lenders, and each of their respective officers, directors, controlling persons, employees, agents, attorneys, affiliates, assigns, or successors of each of the foregoing, with respect to any transaction, occurrence, omission, action or other matter (including formal

discovery proceedings in anticipation thereof), including, without limitation, (A) any Avoidance Actions; (B) any so-called "lender liability" claims and causes of action; (C) any action with respect to the validity, enforceability, priority and extent of, or asserting any defense, counterclaim, or offset to, the DIP Obligations, the DIP Superpriority Claim or the liens granted under this Interim Order or the DIP Documents; (D) any action seeking to invalidate, modify, reduce, expunge, disallow, set aside, avoid or subordinate, in whole or in part or the DIP Obligations; (E) any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to DIP Lenders hereunder or under any of the DIP Documents, including, claims, proceedings or actions that might prevent, hinder or delay any of their respective assertions, enforcements, realizations or remedies on or against the DIP Collateral in accordance with the DIP Documents or this Interim Order; or (F) objecting to, contesting, or interfering with, in any way, the DIP Lenders' enforcement or realization upon any of the DIP Collateral once an Event of Default has occurred.

(b)    Any and all claims incurred by the Committee related to or in connection with any Proscribed Activities shall not constitute an allowed administrative expense claim (including, without limitation, section 1129(a)(9)(A) of the Bankruptcy Code) and shall not be satisfied by the Carve-Out, any cash collateral or proceeds of the DIP Facility, and shall be satisfied solely from the Debtor's unencumbered assets (if any) (the "Unencumbered Assets").

30.    <u>Payment of Compensation</u>.  So long as an unwaived Event of Default has not occurred, and to the extent permitted under the DIP Documents (including, for the avoidance

of doubt, the Budget), the Debtor shall be permitted to pay fees and expenses allowed and payable, as applicable, by any interim, procedural, or final order of this Court (that has not been vacated or stayed, unless the stay has been vacated) under sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable.

31.    Challenge Period.

(a)    Subject only to the terms of this paragraph 30, the various stipulations and waivers contained in this Interim Order shall be without prejudice to the rights of the Committee (if appointed) to seek to disallow the Prepetition Indebtedness or to pursue any claims or seek appropriate remedies against the Promissory Note Lenders in connection with the Promissory Notes.  The stipulations, findings, representations and releases contained in this Interim Order and the DIP Documents shall be binding upon all parties-in-interest, any trustee appointed in these cases and any Committee (each, a "Challenge Party"), unless and solely to the extent that (i) a Challenge Party commences a Challenge (defined below) prior to the expiration of the Challenge Period (defined below) and (ii) the Court rules in favor of the plaintiff in any such timely filed Challenge. For purposes of this Interim Order:  (A) "Challenge" means that a party in interest that has been granted standing by the Court, must commence, as appropriate, a contested matter or adversary proceeding, raising an objection, claim, suit or other  challenge, including, without limitation, a claim in the nature of setoff, counterclaim or defense against any of the Promissory Note Lenders on behalf of the Debtor's estate, or to object to or to challenge the stipulations, findings or Debtor's Stipulations set forth herein; and (B) Subject to entry of the Final Order, "Challenge Period" means (i) with respect to any party-in-interest other than the Committee, the period from the Petition Date until the

27

date that is sixty (60) calendar days after the entry of this Interim Order and (ii) with respect to the Committee, seventy-five (75) calendar days from the date the U.S. Trustee appoints the Committee.

(b)     Upon the expiration of the Challenge Period without the filing of a Challenge (the "Challenge Period Termination Date"):  (A) any and all such Challenges and objections by any party (including, without limitation, any Committee, any Chapter 11 trustee, and/or any examiner or other estate representative appointed in this Case, and any Chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred; (B) all matters not subject to the Challenge, and all findings, Debtor's Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to each of the Promissory Note Lenders' claims and interests shall be of full force and effect and forever binding upon the Debtor, the Debtor's estate, and all creditors, interest holders, and other parties in interest in this Chapter 11 Case and any Successor Case; and (C) any and all claims or causes of action against the Promissory Note Lenders relating in any way to the Promissory Notes shall be forever waived and released by the Debtor, the Debtor's estate, and all creditors, interest holders and other parties in interest in this Case and any Successor Case.

(c)     Nothing in this Interim Order vests or confers on any person, including the Committee or any other statutory committee that may be appointed in this Chapter 11 Case, standing or authority to pursue any cause of action, claim, defense, or other right belonging to the Debtor or its estate.  For the avoidance of doubt, entry of this Interim

Order shall not grant standing or authority to the Committee to pursue any cause of action, claim, defense, or other right on behalf of the Debtor or its estate.

32.     Insurance Policies.     Upon entry of this Order, the Debtor shall be authorized, in accordance with the Budget, without further action or notice, to enter into D&O "tail policies." Any insurance proceeds or other receipts from any source that relate to the DIP Collateral shall be delivered to the Debtor and subject to the DIP Liens and the terms of the DIP Documents.

33.     Section 506(c) Claims.     Subject to entry of the Final Order and the Carve-Out, no costs or expenses of administration which have been or may be incurred in these cases at any time shall be charged against the DIP Lenders or the DIP Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent, as applicable, of the DIP Lenders, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

34.     No Third Party Rights.     Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

35.     No Marshaling/Application of Proceeds.     The DIP Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral, and all proceeds shall be received and applied in accordance with the DIP Documents.

36.     Discharge Waiver.     The DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization in these cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been

29

indefeasibly paid in full in cash (or, with respect to any letters of credit, such letters of credit have been treated in a manner satisfactory to the DIP Lenders) on or before the effective date of such confirmed plan of reorganization. Unless otherwise agreed to by each of the DIP Lenders, the Debtor shall not propose or support any plan of reorganization or sale of all or substantially all of the Debtor's assets or entry of any confirmation order or sale order that is not conditioned upon the indefeasible payment in full in cash of the DIP Obligations on or prior to the earlier to occur of the effective date of such plan of reorganization or sale.

37.     Rights Preserved.  Except as expressly set forth in this Interim Order, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Lenders' right to seek any other or supplemental relief in respect of the Debtor; (b) any of the rights of any of the DIP Lenders under the Bankruptcy Code or under applicable non-bankruptcy law, including the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code or (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans of reorganization; or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of any of the DIP Lenders.

38.     No Waiver by Failure to Seek Relief.  The failure of the DIP Lenders to seek relief or otherwise exercise their rights and remedies under this Interim Order, the DIP Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Lenders.

39.     Binding Effect of Interim Order.  Immediately upon execution by this Court, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtor, the DIP Lenders, all other creditors of the Debtor, the Committee, any other statutory committee that may be appointed in this Chapter 11 Case, and all

other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in this Chapter 11 Case, any Successor Case, or upon dismissal of this Chapter 11 Case or any Successor Case.

40.     _Effect on Certain Pre-Petition Agreements_.  Except as expressly set forth in this Interim Order, the terms and conditions, validity, and enforceability of the Promissory Notes shall not be affected by this Interim Order.

41.     _Interim Order Controls_.  In the event of any inconsistency between the terms and conditions of the DIP Documents and this Interim Order, the provisions of this Interim Order shall govern and control.

42.     _No Right to Seek Modification_.  Unless requested by the DIP Lenders, the Debtor irrevocably waives any right to seek any modification or extension of this Interim Order (in whole or in part) without the prior consent of the DIP Lenders, and no such consent shall be implied by any other action, inaction, or acquiescence of the DIP Lenders.

43.     _Survival_.

(a)     The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any plan of reorganization in any of this Chapter 11 Case, (ii) converting this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing this Chapter 11 Case or any Successor Case, or (iv) pursuant to which this Court abstains from hearing this Chapter 11 Case or Successor Case.

(b)     The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections (as applicable) granted to the DIP Lenders pursuant to this Interim Order and/or the DIP Documents, notwithstanding the entry of

31

any such order, shall continue in this Chapter 11 Case, in any Successor Case, or following dismissal of these cases or any Successor Case, and shall maintain their priority as provided by this Interim Order until all the DIP Obligations, pursuant to the DIP Documents and this Interim Order, have been indefeasibly paid in full and all commitments to extend credit under the DIP Facility are terminated.  The terms and provisions concerning the indemnification of the DIP Lenders shall continue in this Chapter 11 Case, in any Successor Case, following dismissal of this Chapter 11 Case or any Successor Case, termination of the DIP Documents, and/or the indefeasible repayment of the DIP Obligations.

44.      _Waiver of Applicable Stay_.  Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

45.      Notwithstanding the fact that certain relief requested by the Lenders is subject to the entry of a Final Order, such fact shall be without prejudice to the rights of any party, including the U.S. Trustee, to object to such relief if it is requested in the proposed Final Order.  The U.S. Trustee reserves all rights with respect thereto including the right to challenge each and every proposed provision of the proposed Final Order.

46.      _Final Hearing_.  The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for Oct. 8 , 2015, at 2 :00 a.m./p.m. before the Honorable Mary F. Walrath, United States Bankruptcy Judge, at ~~the District Court of~~ Courtroom #4, 824 N. Market St, 5th Floor, Wilmington, DE * ~~the Virgin Islands, Bankruptcy Division, 3013 Estate Golden Rock, Suite 219, St. Croix, VI~~ 00820.  On or before Sept. 21 , 2015, the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the

* Parties may participate by video conference from the courtroom in St. Croix,

32

"Final Hearing Notice"), together with copies of this Interim Order and the Motion, on (a) the parties having been given notice of the Interim Hearing, (b) any party which has filed prior to such date a request for notices with this Court, and (c) counsel for the Committee (if appointed). The Final Hearing Notice shall state that any party-in-interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than _____Oct. 1_____, 2015, at 4:00 p.m. (prevailing Eastern time), which objections shall be served so as to be **actually** **received** on or before such date on: (a) the Office of the United States Trustee for the District of the U.S. Virgin Islands; (b) the Debtor; and (c) the DIP Lenders.

47.     *Nunc Pro Tunc* Effect of this Interim Order.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.

48.     Retention of Jurisdiction.   The Court has retained and will retain jurisdiction to implement, interpret, and enforce this Interim Order according to its terms.

Dated: _____Sept. 17_____, 2015
St. Croix, U.S. Virgin Islands

_____
UNITED STATES BANKRUPTCY JUDGE