**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**BANKRUPTCY DIVISION**
**ST. CROIX, VIRGIN ISLANDS**

|  |  |
|---|---|
| In re:<br><br>HOVENSA L.L.C.,<br><br>          Debtor. | ) <br> ) <br> )  Chapter 11 <br> ) <br> )  Case No. 1:15-bk-10003-MFW <br> ) <br> )  Re: Docket Nos. 15 and 220 |

**ORDER (A)(I) APPROVING THE SALE OF THE DEBTOR'S ASSETS, FREE AND
CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; AND
(II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES; AND (B) GRANTING RELATED RELIEF**

Upon the motion, dated September 15, 2015 (the "**Motion**"), of HOVENSA L.L.C., as debtor and debtor-in-possession (the "**Debtor**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), pursuant to sections 105, 363, 365, 503, and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rules 6004-1 and 6006-1, for (i) entry of an order (the "**Bidding Procedures Order**"): (a) approving the proposed auction and bidding procedures (the "**Bidding Procedures**"), including approval of the Break-Up Fee and the Expense Reimbursement (as such terms are defined in the Motion); (b) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "**Assumption and Assignment Procedures**"); (c) approving the form and manner of notice of all procedures, protections, schedules, and agreements; and (d) scheduling an auction (the "**Auction**") and a hearing (the "**Sale Hearing**") to approve the sale transaction related to the Debtor's crude oil and product storage and terminalling business (the "**Sale**"); and (ii) entry of an order (the "**Sale Order**"): (a) approving the Sale of the Debtor's assets, free and clear of all Interests (as defined in paragraph V below);

(b) authorizing the assumption and assignment of certain executory contracts and unexpired leases; and (c) granting certain related relief; after holding a hearing on October 8, 2015 (the "**Bidding Procedures Hearing**"), this Court having entered the Bidding Procedures Order on October 9, 2015 (Docket No. 220); and the Auction having been commenced on November 10, 2015 and thereafter closed on November 19, 2015; and Limetree Bay Holdings, LLC or its permitted designee (the "**Buyer**") having been selected as the Successful Bidder; and upon the Buyer, the Debtor, and Hess Oil Virgin Islands Corp. ("**HOVIC**") having entered into that certain Amended and Restated Asset Purchase Agreement in substantially the form attached hereto as **Exhibit A**, and as it may be amended, modified, or supplemented in accordance with the terms hereof and thereof (the "**Asset Purchase Agreement**");[1] and this Court having conducted the Sale Hearing to consider entry of this Sale Order on November 17, 19, and 30, 2015; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Motion, the Asset Purchase Agreement, and this Sale Order; and this Court having reviewed and considered the Motion and all objections thereto, and the arguments of counsel made, and the evidence adduced, at the Bidding Procedures Hearing and the Sale Hearing; and upon the entire record of the Bidding Procedures Hearing and the Sale Hearing, and after due deliberation thereon, and good cause appearing therefor:

---

[1]  Capitalized terms used, but not otherwise defined, herein shall have the meaning ascribed to such terms in the Asset Purchase Agreement or, if not defined therein, in the Motion.

2

ny-1206814

**THE COURT HEREBY FINDS THAT:**[2]

**Jurisdiction, Final Order and Statutory Predicates**

A.  This Court has jurisdiction to hear and determine the Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of this Chapter 11 Case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

C.  The statutory predicates for the relief sought in the Motion are sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, and the applicable Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of the Virgin Islands (the "**Local Rules**").

**Notice of the Sale, Auction and the Cure Payments**

D.  Actual written notice of the Sale Hearing, the Auction, the Motion, the Sale, and the assumption, assignment and/or transfer of the Assigned Contracts (as defined in paragraph F below), and a reasonable opportunity to object or be heard with respect thereto and to the entry of this Sale Order has been afforded to all known interested Persons and entities entitled to receive such notice, including, but not limited to, the following parties: (i) counsel to the

---

[2] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

3

ny-1206814

Committee; (ii) counsel to the Buyer; (iii) the Office of the United States Trustee for the District

of the U.S. Virgin Islands; (iv) all entities (or counsel therefore) known to have asserted any lien,

charge, claim or encumbrance on the Purchased Assets; (v) all federal, state and local regulatory

or taxing authorities which are reasonably ascertainable by the Debtor to have a known interest

in the Purchased Assets; (vi) all known non-debtor counterparties to any unexpired leases or

executory contracts that could potentially be assumed and assigned to the successful bidder; (vii)

those parties who expressed a bona fide interest in acquiring the Assets in the six months

preceding the Petition Date; (viii) the Internal Revenue Service; (ix) those parties who have

made the appropriate filings requesting notice of all pleadings filed in the chapter 11 case; (x) the

United States Attorney General's Office for the District of the Virgin Islands; (xi) Hess Oil

Virgin Islands Corporation; (xii) PDVSA, V.I., Inc.; and (xiii)  such other entities as may be

required by applicable Bankruptcy Rules or applicable Local Rules or as may be reasonably

requested by the Buyer.

     E.  The Debtor published the Auction and Sale Notice in each of *The Financial Times*,

*The Wall Street Journal*, and *The Virgin Islands Daily News* on or about October 14, 2015.

     F.  In accordance with the provisions of the Bidding Procedures Order, the Debtor has

served notice (the "**Assumption and Assignment Notice**") upon all of the non-debtor

counterparties (the "**Contract Counterparties**") to the unexpired leases and executory contracts

being assumed and assigned to the Buyer (the "**Assigned Contracts**") setting forth: (i) the

contract(s) and/or lease(s) that may be assumed by the Debtor and assigned to the Buyer; (ii) the

name and address of the Contract Counterparty thereto; (iii) notice of the proposed effective date

of the assignment (subject to the right of the Debtor and/or the Buyer to withdraw such request

for assumption and assignment of the Assigned Contract(s) prior to the Closing); (iv) the

amount, if any, determined by the Debtor to be necessary to be paid to cure and compensate for

ny-1206814

any existing default in accordance with sections 365(b) and 365(f)(2) of the Bankruptcy Code (the "**Cure Amount**"); and (v) the deadlines by which any such Contract Counterparty must file an objection to the proposed assumption and assignment of any Assigned Contract.

G. The service of such Assumption and Assignment Notice (i) was good, sufficient and appropriate under the circumstances of this Chapter 11 Case; (ii) provided such counterparties with a full and fair opportunity to object to such assumption, assignment, or transfer and to the proposed Cure Amount set forth in the Assumption and Assignment Notice; and (iii) was in compliance with the Bidding Procedures Order and applicable provisions of the Bankruptcy Rules and Local Rules.  Accordingly, no other or further notice need be given in connection with such assumption, assignment, or transfer or with respect to the amount of Cure Payments.

H. As evidenced by the affidavits of service previously filed with this Court and as approved under the Bidding Procedures Order:  (i) due, proper, timely, adequate and sufficient notice of the Motion, the Auction, the Sale Hearing, the assumption and assignment of the Assigned Contracts, the entry of this Sale Order, and the Sale has been provided to all parties-in-interest; (ii) such notice was, and is, good, sufficient and appropriate under the circumstances of this Chapter 11 Case, provided a fair and reasonable opportunity for parties-in-interest to object, and to be heard, with respect thereto, and was provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007 and 9014, and the applicable Local Rules; and (iii) no other or further notice of with respect to such matters is necessary or shall be required.

**Business Judgment**

I. The Debtor has demonstrated good, sufficient and sound business purposes and justifications for, and compelling circumstances to promptly consummate, the Sale and other transactions contemplated by the Asset Purchase Agreement and the Transaction Documents,

5

ny-1206814

including, without limitation, the assumption, assignment, and/or transfer of the Assigned
Contracts (collectively, the "**Transactions**") pursuant to sections 363 and 365 of the Bankruptcy
Code, prior to and outside of a plan of reorganization, and such action is an appropriate exercise
of the Debtor's business judgment and in the best interests of the Debtor, its Estate, and its
creditors.

### Good Faith of the Buyer; No Collusion

J.   The Buyer is not an insider (as that term is defined in section 101(31) of the
Bankruptcy Code) of the Debtor.

K.   The Buyer is purchasing the Purchased Assets in good faith, and is a good faith
purchaser, within the meaning of section 363(m) of the Bankruptcy Code.   The Buyer is
therefore entitled to, and granted pursuant to paragraph 24 below, the full rights, benefits,
privileges, and protections of section 363(m) of the Bankruptcy Code, and the Buyer has
otherwise proceeded in good faith in all respects in connection with the Transactions in that,
*inter alia*: (i) the Buyer recognized that the Debtor was free to deal with any other party
interested in acquiring the Purchased Assets; (ii) the Buyer complied with the provisions in the
Bidding Procedures Order; (iii) the Buyer agreed to subject its bid to the competitive bidding
procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by the Buyer
and other agreements or arrangements entered into by the Buyer in connection with the Sale have
been disclosed; (v) the Buyer has not violated section 363(n) of the Bankruptcy Code by any
action or inaction; (vi) no common identity of directors or controlling stockholders exists
between the Buyer, on the one hand, and the Debtor, on the other hand; and (vii) the negotiation
and execution of the Asset Purchase Agreement and Transaction Documents were at arms`
length and in good faith.

6

ny-1206814

L. None of the Debtor, the Buyer, or any of their respective Representatives, has engaged in any conduct that would cause or permit the Asset Purchase Agreement or any of the Transaction Documents, or the consummation of the Transaction, to be avoidable or avoided, or for costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner with any Person in connection therewith.

### Highest and Best Offer

M. In accordance with the Bidding Procedures Order, the Asset Purchase Agreement was deemed a Qualified Bid (as defined in the Bidding Procedures Order) and the Buyer was a Qualified Bidder (as defined in the Bidding Procedures Order) eligible to participate at the Auction.

N. The Debtor conducted a marketing and auction process in accordance with, and has otherwise complied in all respects with, the Bidding Procedures Order.  The marketing and auction process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any Person or entity to make a higher or otherwise better offer to purchase the Purchased Assets.  The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner and a reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the Purchased Assets.

O. As qualified by the Court's findings made on the record at the Sale Hearing, the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Purchased Assets, and will provide a greater overall recovery for the Debtor's Estate than would be provided by any other available alternative.  The Debtor's determination that the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtor's business judgment.  The Asset Purchase Agreement represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of this Chapter 11

ny-1206814

Case.  As qualified by the Court's findings made on the record at the Sale Hearing, no other

Person or entity or group of entities has offered to purchase the Purchased Assets for greater

economic value to the Debtor's Estate than the Buyer.    Approval of the Asset Purchase

Agreement and the relief requested in the Motion, and the prompt consummation of the

Transactions contemplated thereby, is in the best interests of the Debtor, its creditors, its Estate

and other parties-in-interest.

### No Fraudulent Transfer; Not a Successor

P.  The Asset Purchase Agreement and Transaction Documents were not entered into,

and the Transactions are not being consummated, for the purpose of hindering, delaying or

defrauding creditors of the Debtor under applicable Law, and none of the parties to the Asset

Purchase Agreement or any of the Transaction Documents are consummating the Transactions

with any fraudulent or otherwise improper purpose.  The Purchase Price for the Purchased Assets

constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform

Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act

and (iii) reasonably equivalent value, fair consideration, and fair value under any other

applicable Laws of the United States, any state, territory or possession of the United States or the

District of Columbia.

Q. Except as expressly set forth in the Asset Purchase Agreement with respect to the

Assumed Liabilities, the Buyer shall have no liability, responsibility, or obligations of any kind

or nature whatsoever for any Interest of or against the Debtor, or otherwise related to the

Purchased Assets, by reason of the transfer of the Purchased Assets to the Buyer.  The Buyer

shall not be deemed, as a result of any action taken in connection with the Transactions, to:

(1) be a successor (or other such similarly situated party) to the Debtor (other than with respect

to the Assumed Liabilities as expressly stated in the Asset Purchase Agreement); or (2) have, *de*

ny-1206814

*facto* or otherwise, merged or consolidated with or into the Debtor. The Buyer is not acquiring or assuming any Interest, except as expressly set forth in the Asset Purchase Agreement with respect to the Assumed Liabilities.

## Validity of Transfer

R. Subject to the entry of this Sale Order, the Debtor has full corporate power and authority (i) to perform all of its obligations under the Asset Purchase Agreement and the Transaction Documents, and the Debtor's prior execution and delivery thereof and performance thereunder, is hereby ratified in full, and (ii) to consummate the Transactions. The Asset Purchase Agreement and Transaction Documents, and the Transactions contemplated thereby, have been duly and validly authorized by all necessary corporate action. No further consents or approvals are required for the Debtor to consummate the Transactions or otherwise perform its obligations under the Asset Purchase Agreement or the Transaction Documents, except in each case as otherwise expressly set forth in the Asset Purchase Agreement or applicable Transaction Documents.

S. As of the Closing Date, the transfer of the Purchased Assets to the Buyer, including, without limitation, the assumption, assignment and transfer of the Assigned Contracts, will be a legal, valid, and effective transfer thereof, and vests the Buyer with all right, title, and interest of the Debtor in and to the Purchased Assets, free and clear of all Interests accruing or arising any time prior to the Closing Date, except as expressly set forth in the Asset Purchase Agreement with respect to the Assumed Liabilities or Permitted Liens.

## Section 363(f) Is Satisfied

T. The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Transactions contemplated thereby if the sale of the Purchased Assets, including the assumption, assignment and transfer of the Assigned Contracts, to the Buyer were not free

9

ny-1206814

and clear of all Interests of any kind or nature whatsoever (except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Liens and Assumed Liabilities), or if the Buyer, any of its Affiliates or Subsidiaries, or any of their respective Representatives, would, or in the future could, be liable for any of such Interests (except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Liens and Assumed Liabilities).

U.  The Debtor may sell or otherwise transfer the Purchased Assets free and clear of all Interests because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.  Those holders of Interests against the Debtor, its Estate or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of such Interests who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Interests, if any, attach to the proceeds of the Sale ultimately attributable to the Purchased Assets in which such creditor alleges or asserts an Interest, in the same order of priority, with the same validity, force and effect, that such creditor had immediately prior to consummation of the Sale, subject to any claims and defenses the Debtor and its Estate may possess with respect thereto.

V.  As used in this Sale Order, the term "**Interest**" includes, in addition to the types of claims described in paragraph W below, all of the following, in each case to the extent against or with respect to the Debtor or in, on, or against or with respect to any of the Purchased Assets: liens (as defined in section 101(37) of the Bankruptcy Code, and whether consensual, statutory, possessory, judicial or otherwise), claims (as defined in section 101(5) of the Bankruptcy Code), debts (as defined in section 101(12) of the Bankruptcy Code), encumbrances, obligations, Liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights of first refusal, rights of setoff or

10

recoupment, or interests of any kind or nature whatsoever, whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of this Chapter 11 Case, whether imposed by agreement, understanding, Law, equity or otherwise, including, but not limited to, (i) Interests that purport to give to any Person a right or option to effect a setoff against or any forfeiture, modification or termination of the Debtor's interests in the Purchased Assets, or any similar rights; (ii) Interests arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, (iii) Interests that are or constitute, or that arise in connection with or with respect to, any Excluded Liability; (iv) Interests that arise from or in connection with any bulk sales or similar law, and (v) Interests arising under or in connection with any acts, or failures to act, of the Debtor or any of the Debtor's predecessors, Affiliates, or Subsidiaries, or any of their respective Representatives, including, but not limited to, Interests arising under any doctrines of successor, transferee, or vicarious liability, violation of the Securities Act of 1933, the Securities Exchange Act of 1934, or other applicable securities laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable Law or otherwise.

W. Except as expressly set forth in the Asset Purchase Agreement with respect to the Assumed Liabilities or Permitted Liens, and without limiting the nature or scope of paragraph V above, the transfer of the Purchased Assets, including the assumption, assignment and/or transfer of the Assigned Contracts, to the Buyer will not subject the Buyer, or its Affiliates or Subsidiaries, or any of their respective Representatives to, or subject any Purchased Asset to or provide recourse for, any Liability or Lien whatsoever with respect to the operation or condition of the Debtor's business or any of the Purchased Assets prior to the Closing or with respect to

11

any facts, acts, actions, omissions, circumstances or conditions existing, occurring or accruing with respect thereto prior to the Closing Date, including, without limitation, any Liability or Lien arising from any of the following: (i) any employment or labor agreements, consulting agreements, severance arrangements, change in control agreements or other similar agreements to which the Debtor is or was a party, (ii) any pension, welfare, compensation or other employee benefit plans, agreements, practices, and programs, including without limitation, any pension plan of the Debtor, (iii) the cessation of the Debtor's operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs and any obligations with respect thereto that arise from the Employee Retirement Income Security Act of 1974, the Fair Labor Standard Act, Title VII of the Civil rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Americans with Disabilities Act of 1990, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Virgin Islands Plant Closing Act, the Consolidated Omnibus Budget Reconciliation Act of 1985 or the Worker Adjustment and Retraining Notification Act, (iv) workmen's compensation, occupational disease or unemployment or temporary disability insurance claims, (v) environment liabilities, debts, claims or obligations which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act or any Environmental Laws, (vi) products liability or warranties, (vii) any bulk sales or similar law, (viii) any litigation by or against the Debtor and (ix) the Laws of the United States, any state, territory or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity, including, without limitation, any theory of antitrust, products liability, or successor, vicarious or transferee liability.  For the avoidance of doubt, the Liabilities and

12

Liens set forth in this paragraph are included in the defined term "**Interests**" for all purposes of this Sale Order.

### Assumption, Assignment and/or Transfer of the Assigned Contracts

X. The assumption, assignment and/or transfer of the Assigned Contracts to the Buyer pursuant to the terms of this Sale Order is integral to the Asset Purchase Agreement and is in the best interests of the Debtor and its Estate, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtor.

Y. To the extent necessary or required by applicable Law, the Debtor has or will have as of the Closing Date: (i) cured, or provided adequate assurance of cure, of any default existing prior to the Closing Date with respect to the Assigned Contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) provided compensation, or adequate assurance of compensation, to any party for any actual pecuniary loss to such party resulting from such default, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code. The respective amounts set forth on Exhibit A annexed to the Cure Notices served in accordance with the Assumption and Assignment Procedures) are the sole amounts necessary under sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code to cure all such monetary defaults and pay all actual pecuniary losses under the Assigned Contracts.

Z. The promise of the Buyer to perform the obligations first arising under the Assigned Contracts after their assumption and assignment to the Buyer constitutes adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the counterparties to such Assigned Contracts. Those non-Debtor parties to Assigned Contracts who did not object to the assumption, assignment or transfer of their applicable Assigned Contract, or

to their applicable Cure Amount, are deemed to have consented thereto for all purposes of this Sale Order.

AA.    Pursuant to section 2.5 of the Asset Purchase Agreement, the Buyer shall maintain certain rights to modify the list of the Assigned Contracts, after the date of this Sale Order and up to the applicable Designation Deadline as set forth in such section.    Such modification rights include, but are not limited to, the right of the Buyer, prior to the applicable Designation Deadline, to designate a Contract for assumption by the Debtor and assignment to the Buyer, as well as for rejection by the Debtor.    The Buyer would not have agreed to the Transactions without such modification rights.    The notice and opportunity to object provided to Contract Counterparties to such Assigned Contracts and to other parties in interest, as set forth in the Assumption and Assignment Procedures contained in the Bidding Procedures Order, fairly and reasonably protects any rights that such counterparties and other parties in interest may have with respect to such Contracts.

<u>**Compelling Circumstances for an Immediate Sale**</u>

BB.    To maximize the value of the Purchased Assets and preserve the viability of the business to which the Purchased Assets relate, and to reduce the amount of postpetition debtor-in-possession financing borne by the Debtor, it is essential that the Sale of the Purchased Assets occur within the time constraints set forth in the Asset Purchase Agreement.    Time is of the essence in consummating the Sale.    Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 6004 and 6006 with regards to the Transactions contemplated by this Sale Order, the Asset Purchase Agreement and the Transaction Documents.

CC.    Given all of the circumstances of this Chapter 11 Case and the adequacy and fair value of the Purchase Price under the Asset Purchase Agreement, the proposed transfer of the Purchased Assets to the Buyer constitutes a reasonable and sound exercise of the Debtor's

14

business judgment, is in the best interests of the Debtor, its Estate, and its creditors, and should be approved.

DD.    The consummation of the Transactions is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105, 363 and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Transactions.

EE. The sale of Avoidance Actions described in section 2.1(a)(x) of the Asset Purchase Agreement was a material inducement for, and an express condition of, the Buyer's willingness to enter into the Asset Purchase Agreement, and when viewed with the Transactions as a whole, will provide a greater benefit to the Debtor, its Estate, and its creditors than would the retention and prosecution of such Avoidance Actions in the absence of the Transactions.

FF. The Sale does not constitute a *de facto* plan of reorganization or liquidation or an element of such a plan for the Debtor, as it does not and does not propose to:  (i) impair or restructure existing debt of, or equity interests in, the Debtor; (ii) impair or circumvent voting rights with respect to any future plan proposed by the Debtor; (iii) circumvent chapter 11 plan safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests, compromise controversies or extend debt maturities.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

### General Provisions

1.    The Motion, and the relief requested therein, are granted and approved, and the Transactions contemplated thereby and by the Asset Purchase Agreement and Transaction Documents are approved, in each case as set forth in this Sale Order.

ny-1206814

2.      This Court's findings of fact and conclusions of law set forth in the Bidding
Procedures Order and the record of the Bidding Procedures Hearing are incorporated herein by
reference.

3.      All objections to the Motion or the relief requested therein that have not been
withdrawn, waived, resolved, or otherwise settled as set forth herein, as announced to this Court
at the Sale Hearing or by stipulation filed with this Court, and all reservations of rights included
therein, are hereby denied and overruled on the merits.

### Approval of Asset Purchase Agreement; Binding Nature

4.      The Asset Purchase Agreement and the Transaction Documents, and all of the
terms and conditions thereof, are hereby approved as set forth herein.

5.      The consideration provided by the Buyer for the Purchased Assets under the Asset
Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute
reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code and
any other applicable Law, and the Transactions may not be avoided, or costs or damages
imposed or awarded, under section 363(n) or any other provision of the Bankruptcy Code.

6.      Pursuant to sections 363 and 365 of the Bankruptcy Code, the Debtor is
authorized and empowered to, and shall, take any and all actions necessary or appropriate to (a)
consummate the Sale and the other Transactions pursuant to and in accordance with the terms
and conditions of the Asset Purchase Agreement and the Transaction Documents (including,
without limitation, any and all actions and covenants that arise, or otherwise apply to the time
period, after the Closing), and (b) execute and deliver, perform under, consummate, implement,
and take any and all other acts or actions as may be reasonably necessary or appropriate to the
performance of its obligations as contemplated by the Asset Purchase Agreement and the
Transaction Documents, in each case without further notice to or order of this Court.

16

ny-1206814

7.      The Asset Purchase Agreement and Transaction Documents shall be binding in all respects upon the Debtor, its Estate, the Buyer, and all successors and assigns of the foregoing, including, without limitation, any trustee, if any, subsequently appointed in this Chapter 11 Case or upon a conversion to chapter 7 under the Bankruptcy Code of this Chapter 11 Case.  This Sale Order shall be binding in all respects upon the Debtor, its Estate, all creditors, all holders of equity interests in the Debtor, all holders of any Claim(s) (whether known or unknown) against the Debtor, any holders of Interests against, in or on all or any portion of the Purchased Assets, all non-Debtor parties to the Assigned Contracts, the Buyer, and all successors and assigns of the foregoing, including, without limitation, any trustee, if any, subsequently appointed in this Chapter 11 Case or upon a conversion to chapter 7 under the Bankruptcy Code of this Chapter 11 Case.

### Transfer of Purchased Assets Free and Clear of Interests; Injunction

8.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtor shall transfer the Purchased Assets, including but not limited to the Assigned Contracts, to the Buyer on the Closing Date in accordance with the Asset Purchase Agreement and Transaction Documents.  Upon and as of the Closing Date, such transfer shall constitute a legal, valid, binding and effective transfer of such Purchased Assets and the Buyer shall take title to and possession of such Purchased Assets free and clear of all Interests (except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Liens and Assumed Liabilities).

9.      All such Interests shall attach solely to the proceeds of the Sale with the same validity, priority, force and effect that they now have as against the Purchased Assets, subject to any claims and defenses the Debtor and its Estate may possess with respect thereto.  This Sale Order shall be effective as a determination that, on and as of the Closing, all Interests of any kind

17

or nature whatsoever (except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Liens and Assumed Liabilities) have been unconditionally released, discharged and terminated in, on or against the Purchased Assets. The provisions of this Sale Order authorizing and approving the transfer of the Purchased Assets free and clear of Interests shall be self-executing, and neither the Debtor nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Sale Order.

10.     Except as expressly permitted by the Asset Purchase Agreement or this Sale Order, all Persons and entities holding Interests (other than the Permitted Liens and Assumed Liabilities) are hereby forever barred, estopped and permanently enjoined from asserting their respective Interests against the Buyer, any of its Affiliates and Subsidiaries, and any of their respective Representatives, and each of their respective property and assets, including, without limitation, the Purchased Assets. On and after the Closing Date, the Buyer shall be authorized to execute and file such documents, and to take all other actions as may be necessary, on behalf of each holder of an Interest to release, discharge and terminate such Interests in, on and against the Purchased Assets as provided for herein, as such Interests may have been recorded or may otherwise exist. On and after the Closing Date, and without limiting the foregoing, the Buyer shall be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing, or financing statement recorded to attach, perfect or otherwise notice any Interest that is extinguished or otherwise released pursuant to this Sale Order. This Sale Order constitutes authorization under all applicable jurisdictions and versions of the Uniform Commercial Code for the Buyer to file UCC termination statements with respect to all security interests in or liens on the Purchased Assets. For avoidance of doubt, notwithstanding the foregoing or any other provision of this Sale Order, nothing in this Sale

18

Order shall modify, abridge, impair or otherwise alter any of the rights of the Debtor's debtor-in-possession lenders under the debtor-in-possession credit agreement, and the orders of this Court entered into in connection therewith, with respect to or against the Debtor.

11.    On and after the Closing, any Persons holding an Interest (other than a Permitted Lien or an Assumed Liability) shall execute such documents and take all other actions as may be reasonably necessary to release their respective Interests in the Purchased Assets, as such Interests may have been recorded or otherwise filed.  The Buyer may, but shall not be required to, file a certified copy of this Sale Order in any filing or recording office in any federal, state, county or other territory or jurisdiction in which the Debtor is incorporated or has real or personal property, or with any other appropriate clerk or recorded with any other appropriate recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge and terminate any of the Interests as set forth in this Sale Order as of the Closing Date. All Persons and entities that are in possession of any portion of the Purchased Assets on the Closing Date shall promptly surrender possession thereof to the Buyer at the Closing.

12.    To the extent provided by section 525 of the Bankruptcy Code, no governmental unit (as defined in section 101(27) of the Bankruptcy Code) may deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant relating to the operation of the Purchased Assets or the Assigned Contracts, condition such a grant to, or discriminate with respect to such a grant on account of the filing or pendency of this chapter 11 case or the consummation of the Transactions.  This Sale Order is and shall be binding upon and govern the acts of all Persons and entities (including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, and secretaries of state, federal and local officials) who may be required by operation of law, the duties of their office, or contract to

19

accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease. Each of the foregoing Persons and entities shall accept for filing any and all of the documents and instruments necessary and appropriate to release, discharge and terminate any of the Interests or to otherwise consummate the Transactions contemplated by this Sale Order, the Asset Purchase Agreement or any Transaction Document.

### Assigned Contracts; Cure Payments

13.    Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing Date, the Debtor's assumption, assignment and transfer to the Buyer of the Assigned Contracts are hereby authorized and approved in full subject to the terms set forth below. The Buyer shall, on or prior to the Closing, pay or cause to be paid the Cure Amounts (or reserve the Alleged Cure Amount as set forth below) under the Assigned Contracts so that such Contracts may be assumed by the Debtor and assigned to Buyer on the Closing Date in accordance with this Sale Order, the Asset Purchase Agreement and the Transaction Documents; provided that the Buyer's payment of the Pinnacle Cure Amount shall reduce the Terminals Purchase Price to the extent set forth in Section 3.1(a) of the Asset Purchase Agreement. For the avoidance of doubt, the Pinnacle Cure Amount shall be calculated by Pinnacle and the Debtor no later than two (2) business days before the Closing and shall include all amounts incurred under the Pinnacle Contract through the Closing Date.

14.    Upon and as of the Closing, the Debtor is authorized and empowered to, and shall, assume, assign and/or transfer each of the Assigned Contracts to the Buyer free and clear of all Interests (except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Liens and Assumed Liabilities). The payment of the applicable Cure Amounts (if any), or the reservation by the Debtor or Buyer (as applicable) of an amount of cash that is equal

20

ny-1206814

to the lesser of (i) the amount of any cure or other compensation asserted by the applicable

Contract Counterparty as required under section 365 of the Bankruptcy Code or (ii) the amount

approved by order of this Court to reserve for such payment (such lesser amount, the "**Alleged**

**Cure Claim**") shall, pursuant to section 365 of the Bankruptcy Code and other applicable Law,

(a) effect a cure, or provide adequate assurance of cure, of all defaults existing thereunder as of

the Closing Date and (b) compensate, or provide adequate assurance of compensation, for any

actual pecuniary loss to such non-Debtor party resulting from such default.  Accordingly, on and

as of the Closing Date, other than such payment or reservation, none of the Debtor, the Buyer, or

their respective Affiliates or Subsidiaries shall have any further liabilities or obligations to the

non-Debtor parties to the Assigned Contracts with respect to any additional amounts or claims

(as defined in section 101(5) of the Bankruptcy Code) that arose, accrued or were incurred at any

time on or prior to the Closing Date.  The Buyer has provided adequate assurance of future

performance under the relevant Assigned Contracts within the meaning of section 365(f) of the

Bankruptcy Code.

15.    To the extent any provision in any Assigned Contract assumed or assumed and

assigned (as applicable) pursuant to this Sale Order (a) prohibits, restricts or conditions, or

purports to prohibit, restrict or condition, such assumption or assignment (including, without

limitation, any "change of control" provision), or (b) is modified, breached or terminated, or

deemed modified, breached or terminated by any of the following: (i) the commencement of this

Chapter 11 Case, (ii) the insolvency or financial condition of the Debtor at any time before the

closing of this Chapter 11 Case, (iii) the Debtor's assumption or assumption and assignment (as

applicable) of such Assigned Contract, or (iv) the consummation of the Transactions, then such

provision shall be deemed modified so as to not entitle the non-Debtor party thereto to prohibit,

restrict or condition such assumption or assignment, to modify, terminate or declare a breach or

21

default under such Assigned Contract, or to exercise any other default-related rights or remedies with respect thereto, including, without limitation, any such provision that purports to allow the non-Debtor party thereto to recapture such Assigned Contracts, impose any penalty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection therewith. All such provisions constitute unenforceable anti-assignment provisions that are void and of no force and effect pursuant to sections 365(b), 365(e) and 365(f) of the Bankruptcy Code.

16.    All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Buyer of the Assigned Contracts have been satisfied. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtor in and under the Assigned Contracts, and each Assigned Contract shall be fully enforceable by the Buyer in accordance with its respective terms and conditions, except as limited or modified by the provisions of this Sale Order. Upon and as of the Closing, the Buyer shall be deemed to be substituted for the Debtor as a party to the applicable Assigned Contracts and, accordingly, the Debtor shall be relieved from any further liability under the Assigned Contracts pursuant to section 365(k) of the Bankruptcy Code.

17.    Upon the payment of the applicable Cure Amount or reservation of the Alleged Cure Claim, if any, the Assigned Contracts will remain in full force and effect, and no default shall exist, or be deemed to exist, under the Assigned Contracts as of the Closing Date nor shall there exist, or be deemed to exist, any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

18.    The rights of the Buyer to modify the list of the Assigned Contracts after the date of this Sale Order and up to the earlier of (a) the applicable Designation Deadline as set forth in

22

section 2.5 of the Asset Purchase Agreement, and (b) any applicable deadline under the Bankruptcy Code are hereby approved.

19.     All Contract Counterparties to the Assigned Contracts that failed to timely object to entry of this Sale Order shall be deemed to have consented to such assumption and assignment under section 365(c)(1)(B) of the Bankruptcy Code, and the Buyer shall enjoy all of the Debtor's rights, benefits and privileges under each such Assigned Contract as of the applicable date of assumption and assignment without the necessity to obtain any non-Debtor parties' written consent to the assumption or assignment thereof.

20.     Nothing in this Sale Order, the Motion, or in any notice or any other document is or shall be deemed an admission by the Debtor that any Assigned Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code. The failure of the Debtor or the Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of its respective rights to enforce every term and condition of the Assigned Contracts.

**Additional Injunction; No Successor Liability**

21.     Effective upon the Closing Date and except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Liens and Assumed Liabilities, all Persons and entities are forever prohibited and permanently enjoined from (i) commencing or continuing in any manner any action or other proceeding, the employment of process, or any act (whether in law or equity, in any judicial, administrative, arbitral or other proceeding), to collect, recover or offset any Interest;    (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order with respect to an Interest, (iii) creating, perfecting or enforcing any Interest, or (iv) asserting any setoff, right of subrogation or recoupment of any kind with respect to an Interest, in each case as against the Buyer, any of its Affiliates or

23

Subsidiaries, or any of their respective Representatives, or any of their respective property or assets, including the Purchased Assets.

22.    The Transactions contemplated by the Asset Purchase Agreement and the Transaction Documents do not cause there to be, and there is not (i) a consolidation, merger, or *de facto* merger of the Buyer, on the one hand, with or into the Debtor or the Debtor's Estate, on the other hand, or vice versa; (ii) a substantial continuity between the Buyer, on the one hand, and the Debtor or the Debtor's Estate, on the other hand, (iii) a common identity between the Buyer, on the one hand, and the Debtor or the Debtor's Estate, on the other hand, or (iv) a mere continuation of the Debtor or its Estate, on the one hand, with the Buyer, on the other hand.

23.    Except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Liens and Assumed Liabilities, the transfer of the Purchased Assets, including, without limitation, the assumption, assignment and transfer of any Assigned Contract, to the Buyer shall not cause or result in, or be deemed to cause or result in, the Buyer, any of its Affiliates or Subsidiaries, or any of their respective Representatives, having any liability, obligation, or responsibility for, or any Purchased Assets being subject to or being recourse for, any Interest whatsoever, whether arising under any doctrines of successor, transferee or vicarious liability, breach of fiduciary duty, aiding or abetting breach of fiduciary duty or otherwise, whether at Law or in equity, directly or indirectly, and whether by payment, setoff, recoupment, or otherwise.

### Good Faith

24.    The Transactions contemplated by this Sale Order, the Asset Purchase Agreement and Transaction Documents are undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale and other

24

Transactions shall not alter, affect, limit, or otherwise impair the validity of the Sale or such other Transactions (including the assumption, assignment and/or transfer of the Assigned Contracts), unless such authorization and consummation are duly stayed pending such appeal. The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and hereby granted, the full rights, benefits, privileges and protections of section 363(m) of the Bankruptcy Code. The purchase price reflected in the Asset Purchase Agreement was not controlled by an agreement between potential or actual bidders within the meaning of section 363(n) of the Bankruptcy Code. The Debtor and the Buyer have not engaged in any conduct that would cause or permit the Asset Purchase Agreement or the consummation of the Transactions to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

## **Other Provisions**

25.    Nothing in this Sale Order or the Asset Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any environmental liability to a governmental unit under police or regulatory statutes or regulations that any entity would otherwise be subject to as the owner or operator of property after the date of entry of this Sale Order.  As relates to environmental matters, nothing in this Sale Order or the Asset Purchase Agreement authorizes (a) the transfer of any governmental license, permit, registration, authorization or approval without compliance with all applicable legal requirements under non-bankruptcy law or (b) the discontinuation of any obligation of the Debtor under any governmental license, permit, registration, authorization, or approval without compliance with all applicable legal requirements under non-bankruptcy law.  Nothing in this Sale Order divests any tribunal of any jurisdiction it may have under applicable environmental law or other governmental regulatory non-bankruptcy law to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.

ny-1206814

Nothing in this Sale Order or the Asset Purchase Agreement modifies or supersedes the Debtor's obligations under the consent decree entered into by Debtor, the United States, and the Government of the Virgin Islands in United States v. Hovensa L.L.C., No. 1:11-cv-00006 (D.V.I.).

26.    In accordance with section 3.5(f) of the Asset Purchase Agreement, at the Closing, the Buyer shall deliver or cause to be delivered to the USVI Government, the USVI Government Concession Fee (which shall be an amount equal to $100 million) by wire transfer of immediately available funds in an account designed by the USVI Government in writing to Buyer. Payment of the USVI Government Concession Fee by the Buyer shall satisfy in full all claims of the USVI Government against the Debtor, including the claims of the GVI under the First Priority Mortgage that was issued in connection with that certain settlement agreement between the Debtor and the GVI dated May 28, 2014, but excluding any environmental claims. In accordance with, and to the extent set forth in, section 3.1(a) of the Asset Purchase Agreement, the Buyer's payment of the USVI Government Concession Fee (which constitutes part of the Buyer's purchase price for the Purchased Assets) shall reduce (on a dollar-for-dollar basis) the portion of the Buyer's purchase price to be paid to Debtor at Closing for the Purchased Assets. In accordance with, and to the extent set forth in, Section 7.33 of the Asset Purchase Agreement, the Buyer shall reimburse the Debtor (or, upon the Debtor's request, pay on the Debtor's behalf) for the Debtor's reasonable and documented out-of-pocket costs and expenses incurred in connection with the winding-up of the Debtor's affairs (including conducting Remedial Actions related to Excluded Liabilities and dismantling and disposing of any Retained Refinery Assets or other Excluded Assets) (the "Wind-Up Costs") and the performance of the Debtor's obligations under the Transaction Documents, if any; provided, however, that the aggregate amount of the Wind-Up Costs to be reimbursed (or paid on the Debtor's behalf) shall

26

not exceed $30 million. Notwithstanding the foregoing, in no event shall the portion of the Buyer's purchase price to be paid to the Debtor at Closing for the Purchased Assets be less than $90 million, less the Pinnacle Cure Amount.

27.    At the Closing, the Debtor shall repay in full in cash to the DIP Lenders (as defined in the *Final Order (A) Approving Postpetition Financing, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, and (C) Modifying the Automatic Stay* (the "Final DIP Order") all accrued but unpaid DIP Obligations as such term is defined in the Final DIP Order. Such payment shall be in full and complete settlement, release, and discharge of all DIP Obligations.

28.    The Buyer is hereby authorized, in its discretion, in connection with consummation of the Transactions to allocate the Purchased Assets, Assumed Liabilities, and Assigned Contracts among its Affiliates, Subsidiaries, designees, assignees, and/or successors in a manner as it, in its discretion, deems appropriate and such Person shall be entitled to all of the rights, benefits, privileges and protections of "the Buyer" as are accorded to the Buyer under this Sale Order, and the Debtor shall, to the extent set forth in the Asset Purchase Agreement and Transaction Documents, cooperate with and take all actions reasonably requested by Buyer to effectuate any of the foregoing. In the event that the Buyer designates any designee to acquire any Purchased Assets, including, without limitation, any Assigned Contracts, in accordance with the terms and conditions of the Asset Purchase Agreement, then any reference to "the Buyer" in this Sale Order shall be deemed to be a reference to "the Buyer and/or its applicable permitted designee," unless the context requires otherwise, and such permitted designee shall be entitled to, and is hereby granted, the full rights, benefits, privileges and protections of the Buyer as are set forth in this Sale Order.

ny-1206814

29.    To the extent any plan of reorganization or liquidation, or any order of any type or kind entered in this Chapter 11 Case or any subsequent chapter 7 case into which this Chapter 11 Case may be converted, conflicts with or derogates from the terms of the Asset Purchase Agreement or this Sale Order, the terms of the Asset Purchase Agreement and this Sale Order shall control and govern to the extent of any such conflict or derogation.

30.    Pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the stays provided in Bankruptcy Rules 6004(h) and 6006(d) are hereby expressly waived and shall not apply. Accordingly, the Debtor is authorized and empowered to close the Sale and other Transactions immediately upon entry of this Sale Order.

31.    Notwithstanding anything contained in this Sale Order, the terms and conditions of this Sale Order shall be effective and enforceable only upon the satisfaction of each of the following additional conditions: (i) PDVSA, V.I., Inc. ("**PDV-VI**") shall have received approvals for the Sale and other Transactions, including with respect to any waiver of pre-petition claims held by PDV-VI and/or its Affiliates against the USVI Government, HOVIC, Hess, and/or their respective Affiliates, on or before December 14, 2015 (the "**Outer Date**"); provided, that such waiver shall not bar PDV-VI, HOVIC, and/or its Affiliates from asserting such claims for purposes of setoff, offset, recoupment or other defensive purposes (which claims, for the avoidance of doubt, shall not be entitled to any affirmative recovery from the Debtor); (ii) the releases contemplated by section 8.3(f) of the Asset Purchase Agreement shall have been finalized and executed on or before the End Date, in form and substance acceptable to each of the parties thereto in their sole respective capacities, which agreement shall, among other things, provide for the mutual release of claims by and among HOVIC, PDV-VI, the USVI Government, and/or their respective Affiliates; (iii) on or before the Outer Date, HOVIC or one of its

28

Affiliates shall have agreed to assume the Debtor's pension obligations arising from the HOVENSA Employees' Pension Plan, in a form and manner acceptable to HOVIC, the Committee, the Pension Benefit Guaranty Corporation, and the Debtor and in accordance with the requirements of the Internal Revenue Code, ERISA and applicable law, which such assumption shall be subject to and occur upon consummation of a liquidating plan that contains estate releases for HOVIC and its Affiliates; (iv) the Legislature of the U.S. Virgin Islands (the "**Legislature**") shall have approved the Sale and other Transactions by the End Date and such approval shall not limit or affect in any way the releases granted in clause (ii) of this Paragraph; (v) the Committee shall be satisfied with respect to the scope of the claims that may be asserted against the Debtor by the Environmental Protection Agency or shall have waived this condition on or before the Outer Date; and (vi) on or before the Outer Date: (a) the Office of the United States Trustee, the Committee, and the Debtor shall be satisfied that the letter agreement, dated November 9.2015, between the Governor of the U.S. Virgin Islands and the Buyer regarding the proposed concession agreement has no economic impact on the Debtor or its estate beyond what is already expressly included in the terms and conditions of the Asset Purchase Agreement and (b) the Buyer shall have filed the letter agreement with the Court (collectively, the "**Additional Closing Conditions**"); provided, however, that the Outer Date may be extended by the mutual agreement of the Debtor, the Committee, PDV-VI, HOVIC, and the USVI Government, as appropriate, in consultation with the Buyer; and further provided that, if any of the Additional Closing Conditions fail to occur by the Outer Date or the End Date, as applicable, and are not waived, the Debtor shall not seek to set a hearing date on its motion to approve the Sale to the Buyer that is less than thirty (30) days from the Outer Date, as such date may have been extended from time to time. The Debtor shall notify the Committee and the Buyer of the occurrence of the Additional Closing Conditions identified in (i), (ii) and (iii) above in writing

29

ny-1206814

promptly upon the occurrence of such events, the Committee shall notify the Debtor and the
Buyer of the occurrence of the Additional Closing Condition identified in (v) above in writing
promptly upon the occurrence of such event, and the Buyer shall notify the Debtor of the
occurrence of the Additional Closing Condition identified in (vi) above in writing promptly upon
the occurrence of such event.  The rights of all parties are reserved with respect to the Sale prior
to satisfaction or waiver of the Additional Closing Conditions.  Upon satisfaction or waiver of
the Additional Closing Conditions, the Debtor shall promptly file a notice thereof with this Court
and may thereafter, subject to the terms and conditions of the Asset Purchase Agreement, seek to
consummate the Sale and other Transactions contemplated by the Asset Purchase Agreement
without further notice to, order of, or hearing before this Court.  Nothing in this paragraph,
including, without limitation, the extension of the Outer Date, shall, or shall be deemed to,
amend, modify, or waive any term or condition of the Asset Purchase Agreement (including any
condition precedent to the Sale or the right and timing of the Buyer to receive the return of its
Good Faith Deposit) or limit, alter, or impair the ability of the Buyer to terminate the Asset
Purchase Agreement in accordance with the terms and conditions thereof.

32.     Nothing in this Sale Order shall modify or waive any closing conditions or
termination rights in Articles VIII and IX, respectively, of the Asset Purchase Agreement, and all
such conditions and rights shall remain in full force and effect in accordance with their terms.

33.     No bulk sales law or any similar law of any state or other jurisdiction applies in
any way to the Transactions.

34.     All payment or reimbursement obligations of the Debtor owed to the Buyer
pursuant to the Asset Purchase Agreement or the Transaction Documents shall be paid in the
manner provided therein, without further notice to or order of this Court.  All such obligations
shall constitute allowed administrative claims against the Debtor, with priority administrative

ny-1206814

expense status under sections 503(b) and 507(a)(2) of the Bankruptcy Code, junior in priority to any super-priority administrative expense claim granted to, or on behalf of, the lenders in connection with any debtor-in-possession financing approved by Bankruptcy Court.    Until satisfied in full in cash, all such obligations shall continue to have the protections provided in this Sale Order, and shall not be discharged, modified or otherwise affected by any reorganization plan for the Debtor.

35.    The failure specifically to include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Asset Purchase Agreement be authorized and approved in its entirety.

36.    The Asset Purchase Agreement and Transaction Documents may be modified, amended or supplemented in a writing signed by the parties thereto and in accordance with the terms thereof, without further notice to or order of this Court, provided that any such modification, amendment or supplement shall not have a material adverse effect on the Debtor's Estate unless approved by order of this Court.    All such modifications, amendments and/or supplements shall be provided promptly to counsel to the Committee.

37.    This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b), to, among other things, (i) interpret, implement, and enforce the terms and provisions of this Sale Order, the Asset Purchase Agreement, the Transaction Documents, and any amendments thereto and any waivers and consents given thereunder, (ii) compel delivery of the Purchased Assets to the Buyer; (iii) enforce the injunctions and limitations of liability set forth in this Sale Order, and (iv) enter any orders under sections 105, 363 and 365 of the Bankruptcy Code with respect to the Purchased Assets and Assigned Contracts.

ny-1206814

38.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a). The rules of construction set forth in section 1.3 of the Asset Purchase Agreement shall apply to this Sale Order, *mutatis mutandis*.

39.    The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the provisions of this Sale Order and the terms and conditions of the Asset Purchase Agreement and the Transaction Documents.

40.    To the extent that this Sale Order is inconsistent with the Motion, the terms of this Sale Order shall control and govern. To the extent there are any inconsistencies between the terms of this Sale Order, on the one hand, and the Asset Purchase Agreement or any Transaction Document, on the other hand, the terms of this Sale Order shall control and govern.

41.    Notwithstanding anything to the contrary contained in this Sale Order, any agreement or other document, upon closing of the Sale contemplated by this Sale Order, the sum of $30 million shall be placed in a separate interest bearing account (the "**UCC Beneficiary Account**") for the sole benefit of the UCC Beneficiaries (as defined below), which amount shall be subject only to the UCC Carveout (as defined below). Sums from the UCC Beneficiary Account shall be distributed for UCC Beneficiaries upon and after the consummation of a chapter 11 plan of liquidation, under terms acceptable to the Committee, the Debtor, and any liquidating trustee, as appropriate. UCC Beneficiaries include holders of allowed nonpriority general unsecured claims other than: (1) claims held by HOVIC or PDV-VI; (2) any claims of the USVI Government; (3) any claim of any governmental entity, unless otherwise agreed in writing by the Committee, the Debtor, and any liquidating trustee, as appropriate; (4) any claim of any parent, affiliate, assigns, officer, director, employee or agent of (1) through (3); provided, however, nothing herein shall limit or affect in any way the rights of such officers or directors to assert claims (i) against the Debtor's insurance carrier and/or (ii) for purposes of setoff, offset,

32

ny-1206814

recoupment or other defensive purposes (which claims, for the avoidance of doubt, shall not be entitled to any affirmative recovery from the Debtor).  UCC Carveout means any amount in excess of the aggregate amount budgeted for the Committee, its members and Committee professionals, and for any post-plan confirmation costs and fees incurred in connection with determining the validity of UCC Beneficiary Claims and making distributions to UCC Beneficiaries under the terms acceptable to the Committee, the Debtor, and any liquidating trustee, as appropriate.

42.    Buckeye Partners, L.P. ("**Buckeye**") is hereby designated as the Backup Bidder (as defined in the Bidding Procedures).  The Debtor is authorized to close a transaction with Buckeye as Backup Bidder provided that: (a) the conditions to closing of the transaction with the Buyer (including, without limitation, approval by the Governor and Legislature of the proposed concession agreement between the USVI Government and the Buyer) are not satisfied or waived, as applicable, in accordance with the terms and conditions of the Asset Purchase Agreement; (b) the conditions to closing of the transaction with the Backup Bidder (including, without limitation, approval by the Governor and Legislature of the proposed concession agreement between the USVI Government and the Backup Bidder) are satisfied or waived, as applicable, in accordance with the terms and conditions of the asset purchase agreement governing the Backup Bid (as defined in the Bidding Procedures); and (c) Buckeye has removed the condition precedent in its bid with respect to any proceeding commenced by the Federal Trade Commission as described on the record during the Sale Hearing.

43.    At Closing, Buyer or Back-up Bidder (as defined in the Bidding Procedures) will deposit into a segregated account or escrow account in the State of Delaware the sum of $8,968,147.66 in Sale proceeds (the "**Proceeds**") as adequate protection for the charging lien and equitable interest of John K. Dema, P.C. (the "**Dema Firm**").  The charging lien and equitable

ny-1206814

interest of the Dema Firm will attach to the Proceeds notwithstanding the payment to the Government of the Virgin Islands in satisfaction of the Government of the Virgin Islands' own claims under paragraph 26 of this Sale Order.  Upon execution of an escrow agreement mutually acceptable to the closing Buyer or Back-up Bidder (the "**Successful Purchaser**") and the Dema Firm on or prior to December 16, 2015, the Proceeds will be deposited into a segregated or escrow account with an escrow agent that is mutually acceptable to the Successful Purchaser and the Dema Firm.  In the absence of such an agreement on or before December 16, 2015, the Court will determine the terms of such escrow agreement including the specification of the escrow account with an escrow agent.  No Proceeds will be disbursed from the segregated account or the escrow account absent (a) written agreement of the Successful Purchaser and the Dema Firm, (b) an arbitration award, or (c) an order of this Court.  The Proceeds will not be subject to garnishment, execution, or other process by any (i) creditor of the Successful Purchaser, (ii) the Debtors, (iii) the Government of the Virgin Islands, or (iv) any other entity as such funds are in *custodia legis* for the benefit of the Dema Firm.  To the extent the amount of an agreement between the Successful Purchaser and Dema Firm, an arbitration award, or order of this Court are in an amount less than $8,968,147.66, the balance of funds remaining shall revert to the Successful Purchaser.  Notwithstanding Successful Purchaser's agreement to segregate or escrow the Proceeds, this right to the balance of funds remaining, if any, is the only right Successful Purchaser has to the funds.  The Successful Purchaser waives all other rights and shall not appear adverse to the Dema Firm in any proceeding, including arbitration, related to the Dema Firm's entitlement to the funds.  For the avoidance of doubt, the Proceeds referred to in this paragraph are in addition to the Sale proceeds addressed in paragraph 26 of this Sale Order.

34

Dated: December 1, 2015
       St. Croix, Virgin Islands

_____
UNITED STATES BANKRUPTCY JUDGE

ny-1206814