**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**BANKRUPTCY DIVISION**
**ST. CROIX, VIRGIN ISLANDS**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HOVENSA L.L.C., | ) | |
| | ) | Case No. 1:15-bk-10003 (MFW) |
| Debtors. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**[1]

Before the Court is the Motion of Attorney Lee J. Rohn for Disgorgement of Fees or in the Alternative for a Fee Audit of the fees paid to counsel for the Liquidating Trustee. Although the Court agrees with Attorney Rohn that her dispute over the fees paid by the Liquidating Trustee to his counsel is within the jurisdiction of this Court, it finds that the fees are reasonable and that disgorgement is not appropriate for the reasons stated below.

I. BACKGROUND

On September 15, 2015, Hovensa L.L.C. (the "Debtor") filed a petition under chapter 11 of the Bankruptcy Code. On January 20, 2016, the Court confirmed the Debtor's Second Amended Plan (the "Plan"). (D.I. 563, 572.) The Plan established the Hovensa Liquidating Trust (the "Trust") to administer the Trust's assets and to resolve general unsecured claims through distribution and

---

[1] This Memorandum Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

other means.  Under the Plan, Jay Borow was appointed as the Liquidating Trustee.  The Plan also provided for an Oversight Committee consisting of three members: John Keough, Stephen Weisbrod, and Lee Rohn.  The Trust was charged with resolution and payment of the remaining unsecured claims.  The Liquidating Trustee retained Dentons US LLP ("Dentons")[2] as general counsel and Weisbrod Matteis and Copley ("WMC")[3] as special insurance counsel.

The Liquidating Trust has since resolved and paid all trade claims, with the approval of the tort claimant representatives and the Court.  (D.I. 856 & 864.)  After extensive negotiation, the Trust and Oversight Committee also agreed to a procedure for the resolution of tort claims, which was approved by this Court.  (D.I. 1042.)  Under that procedure, tort claimants were given two options.  Under Option 1, claimants agreed to have their claims against the estate valued by retired Judge Henry Smock in a very expedited and summary fashion after submission of relevant information.  (Id. at ¶ 14.)  Those claims would then be paid their pro rata share of the funds held by the Trust.  (Id. at ¶¶ 15 & 23.)  Option 2 granted immediate relief from the stay and the Plan injunctions to claimants who were then free to pursue

---

[2]   Dentons had served as counsel to the Unsecured Creditors' Committee during the chapter 11 case.

[3]   WMC was a firm owned by Stephen Weisbrod, a member of the Oversight Committee.

2

the Debtor's insurance carrier and any other parties who might be responsible for their claims. (Id. at ¶¶ 30-31.) Option 2 claimants, however, waived any claims and rights to a distribution they may have against the estate. (Id. at ¶ 32.) Attorney Rohn represents approximately 70% of the claimants who elected Option 1 and a substantial number of claimants who elected Option 2. (D.I. 1177 at ¶ 22.)

On October 15, 2018, Attorney Rohn filed a Motion for Disgorgement of Fees or in the Alternative a Motion for Fee Audit of Dentons and WMC. (D.I. 1173.) The Liquidating Trustee filed a Request for Summary Disposition of, and Preliminary and Procedural Objection to, the Motion. (D.I. 1177.) A hearing was scheduled on the Motion for November 15, 2018, but was canceled when the parties asked that the Court rule on the written submissions. The matter is ripe for decision.

II. ARGUMENT

    A. Jurisdiction

The Liquidating Trustee contends, as a preliminary objection, that the Court does not have jurisdiction to review the fees of his professionals. He argues that the confirmed Plan provided, through the Liquidating Trust documents, for review of his professionals' fees only by him and the Oversight Committee. (D.I. 563 at Art. VII.F.) The Confirmation Order itself provided

3

that once approved in that manner, such fees "shall be paid" by the Trust "without any further notice to or action, order, or approval of the Bankruptcy Court."  (D.I. 572 at ¶ 56.)  Although the Bankruptcy Court retained jurisdiction after confirmation to resolve general disputes, the Liquidating Trustee contends that it does not have jurisdiction over the approval or payment of his professionals' fees.

Attorney Rohn responds that the provisions of the Plan and Confirmation Order which allow payment of the Liquidating Trustee's professionals' fees without Court Order does not mean that the Court has no jurisdiction over those fees.  She points to the Liquidating Trust documents as support for her contention that any dispute over those fees falls within the Bankruptcy Court's jurisdiction.  (D.I. 596.)

The Court agrees with Attorney Rohn.  The Liquidating Trust documents expressly provide that if there is a dispute over the fees of the Liquidating Trustee's professionals, the Bankruptcy Court will have jurisdiction to decide that dispute.  The Liquidating Trust Agreement provides that "the Bankruptcy Court shall retain exclusive jurisdiction over the Liquidating Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection therewith."  (Id. at § 12.8.)

In addition, section 2.6 specifically states that "[i]f the

4

parties are unable to reach a consensual resolution of any [fee] objection, the party who received an objection to its fees and expenses may seek payment of such fees and expenses by filing a motion with and obtaining an Order from the Bankruptcy Court." (Id. at § 2.6(b).) Similarly, section 4.5 of the Liquidating Trust Agreement provides that "[a]ny disputes between and among the Oversight Committee, its Members or the Liquidating Trustee shall be resolved by the Bankruptcy Court, and the Liquidating Trustee shall bring any such dispute to the Bankruptcy Court for resolution if so requested in writing by any of such parties." (Id. at § 4.5.)

Therefore, the Court concludes that it has jurisdiction to decide the Motion filed by Attorney Rohn.

B.   Timeliness

The Liquidating Trustee also contends that Attorney Rohn's Motion is grossly untimely because it seeks disgorgement of fees allowed and paid for the 31 months that the Liquidating Trust has been operating. He contends that changing the fee procedures at this late date is an impermissible modification of the Plan. 11 U.S.C. § 1127(b) (prohibiting modification of a plan post-confirmation if the plan has been substantially consummated).

The Court rejects the Trustee's argument that the Motion filed by Attorney Rohn seeks to impermissibly modify the confirmed Plan because, as the Court finds above, the request is

5

in compliance with both the Plan and the Liquidating Trust Agreements.

The Court does agree with the Liquidating Trustee, however, that the Motion is barred by the doctrine of laches. See, e.g., Lehman Bros. Holdings Inc. v. Spanish Broad. Sys., Inc., No. CIV.A. 8321-VCG, 2014 WL 718430, at *7 (Del. Ch. Feb. 25, 2014), aff'd, 105 A.3d 989 (Del. 22014) (stating that "equity encompasses the doctrine that if a plaintiff seeking equitable relief unreasonably delays in bringing her claim, and that delay unfairly prejudices the defendant, laches will bar the equitable relief the plaintiff seeks.").

The Motion seeks review and disgorgement of fees going back as far as February 2016. (D.I. 1173 at Exs. 7 & 8.) Attorney Rohn did not advise the Liquidating Trustee in writing of any objections to those fees, however, until July 2017. (Id. at Ex. 1.) The July 19, 2017, letter expressed concerns only with respect to Dentons' May 2017 statement. (Id.) Her complaints thereafter were intermittant. (Id. at Exs. 3 & 5.) Further, the Oversight Committee (of which she was a member) reviewed all of the fee requests of the Liquidating Trustee's professionals and approved them unanimously or by a two to one vote. (Id. at Exs. 2 & 6.) The Liquidating Trustee's professionals relied on approval and payment of their fees in accordance with that procedure.

Because Attorney Rohn did not file her Motion with the Court until October 15, 2018, the Court concludes that she sat on her rights and disgorgement of the professionals' fees at this late date (almost three years after some of them were incurred) is barred by the doctrine of laches.

C.  Merits of the Motion

Even if the Motion were not barred by laches, the Court concludes that it is without merit.  In her Motion, Attorney Rohn contends that Dentons and WMC have overbilled the estate by billing for duplication of services (including intra-office conferences), secretarial or clerical work, and submitting vague descriptions of services, citing In re D'Amico, No. 05-19217, 2009 WL 2982987 (Bankr. N.D.N.Y. Sept. 14, 2009); In re New Boston Coke Corp., 299 B.R. 432 (Bankr. E.D. Mich. 2003); In re Bennett Funding Group, Inc., 213 B.R. 234 (Bankr. N.D.N.Y. 1997).

The Liquidating Trustee contends that the cases cited by Attorney Rohn are inapposite because they concerned the approval of fees of professionals of the estate under sections 327 through 330 of the Bankruptcy Code which are no longer applicable because the fees in question are for post-confirmation professionals.

The Court disagrees with the Liquidating Trustee.  Under the Bankruptcy Code, fees must be "reasonable" to be eligible for compensation.  The Liquidating Trust Agreement itself provides for a "reasonableness" standard for fees of the Liquidating

Trustee, his professionals, and members of the Oversight Committee. (D.I. 596 at §§ 2.5 & 4.5.) Therefore, the Court concludes that it is appropriate to apply that standard to the fees to which Attorney Rohn objects.

However, the Court does agree that the cases cited by Attorney Rohn are not applicable because they do not state the standard for the determination of reasonable fees articulated in the Third Circuit. See, e.g., In re Busy Beaver Bldg. Centers, Inc., 19 F.3d 833 (3d Cir. 1994). Further, while the Motion attaches what purports to be a fee audit (the "Audit") and identifies certain entries in the invoices which Attorney Rohn asserts are not compensable, the Court disagrees with her conclusion that compensation is not appropriate for those services.

### 1. Administrative services

The Motion objects to entries it describes as "administrative" and alleges that these are "clearly overhead expenses and the cost of doing business." Attorney Rohn asserts that such services are not compensable. See, e.g., D'Amico, 2009 WL 2982987, at * 4.

The Third Circuit has, however, rejected a per se rule disallowing clerical or administrative services, noting that "we expect that, when feasible, members of the bar representing debtors will engage paralegals and other support staff when they

are able to render legal services efficiently yet effectively, with the objective of alleviating the diminution of the estate's assets." Busy Beaver, 19 F.3d at 852.

Applying Third Circuit law, it is clear that the objection to compensation for administrative services is without merit. Dentons' entries show the need for the services rendered, which included the establishment and maintenance of an extranet data room for the tort claims, reviewing and serving pleadings in the case, preparing exhibits, retrieving documents, and similar tasks. (D.I. 1173 at Ex. 7.) The WMC entries to which Attorney Rohn objects as administrative are similar: they involved the organization of the relevant insurance policies and preparation of a chart of them; the creation of a folder in their system for all relevant insurance documents and emails; downloading, reviewing, organizing, and maintaining a database of documents produced in litigation; researching and organizing documents for an upcoming hearing; and retrieving, organizing, and compressing documents for electronic production to opposing counsel. (Id. at Ex. 8.)

The Court concludes that all of these tasks are those typically performed by paralegals or lower level associates and do involve the exercise of legal judgment and expertise. As such, the Court concludes that these tasks are clearly the provision of legal services and were appropriately performed by

9

lower level associates or paralegals.  Further, the Court does not find that billing for these administrative services was excessive in this case.[4]  Instead, it was an efficient and effective manner of providing services to the Liquidating Trustee and fully consistent with Third Circuit law.  Busy Beaver, 19 F.3d at 852.

        2.   Vague descriptions/blockbilling

The Motion also objects to entries described as "vague, non-descriptive, block billing of time."  Approximately 170 hours of Dentons' total 2200 hours of services and 24 hours of WMC's 1000 hours of services are so characterized in the Audit.

The Third Circuit has confirmed "the applicant's duty to submit fee applications with enough detail to enable the court to reach an informed decision - one necessarily grounded in complete, coherent information - as to whether the requested compensation is justified."  Busy Beaver, 19 F.3d at 845 (citing In re Nucorp Energy, Inc., 764 F.2d 655, 658 (9th Cir. 1985).

That duty also includes the obligation to not "lump" entries but to list each service performed and the amount of time spent on it.  See, e.g., In re Jefsaba, Inc., 172 B.R. 786, 801 (Bankr. E.D. Pa.) ("It is well-settled in this circuit that only time

---

[4]   The Audit identified approximately 52 hours of Dentons' 2200 hours of services and 16 of WMC's 1000 hours of services as objectionable administrative services.  (D.I. 1173 at Exs. 7 & 8.)  This is less than 3% of the total hours billed by them. (Id.)

entries separately listed and explained in detail are compensable.") (citing In re Meade Land and Development Co., Inc., 527 F. 2d 280, 283 (3d Cir. 1975); In re Mayflower Associates, 78 B.R. 41, 48 (Bankr. E.D. Pa. 1987)).

"Courts have refused repeatedly to approve unitemized disbursements for services that are lumped together in a single entry, because such action inhibits the court from estimating the reasonableness of the individual services and their value to the debtor's estate." In re Worldwide Direct, Inc., (quoting In re Ward, 190 B.R. 242, 246 (Bankr. D. Md. 1995)).

However, in this case, the Court comes to the same conclusion that it did in the Worldwide Direct case: "While the objection is technically correct, we do not find generally that the time entries are lumped to such an extent that we cannot ascertain whether an appropriate amount of time was spent on each task." Id. at 643.

A review of the entries identified in the Audit as "blockbilling" reveals that those entries typically do not "lump" together activities without breaking down the amount of time spent on each activity within that entry. A review of Dentons' entries identified in the Audit as "vague" show them to be related to claims review,[5] insurance coverage issues,[6] trust-

---

[5] See entries for 3/2/16, 3/17/16, 3/29/16, 3/30/16, 4/1/16, 4/4/16, 5/18/16, 5/19/16, 5/21/16, 5/27/16, 7/9/16, 9/1/16, 9/6/16, 9/7/16, 9/21/16, 11/4/16, 5/10/18, 5/14/18,

11

related issues,[7] document production,[8] and the like.  Because the Liquidating Trustee was responsible for those issues, the Court finds that the work done was within Dentons' responsibility and necessary for the provision of services to the Trustee.  The Court finds that Dentons provided sufficient detail of the work done.

For example, the Audit lists as "excessive/nondescript/vague" Dentons' entries on December 14, 15 and 29, 2016, for drafting and revising a bifurcation motion.  The Court does not feel that the time is excessive or that the description is lacking.  The December 29 entry shows that the revisions were being done as a result of comments by the Liquidating Trustee and the Oversight Committee (of which Attorney Rohn was a member) so she was already familiar with the work being done.[9]

Similarly, the WMC entries alleged to be "lumped" or "vague"

---

5/16/18, 7/27/18.  (D.I. 1173 at Ex. 7.)

[6]   See entries for 3/2/16, 4/4/16, 5/18/16, 6/22/16, 5/14/18, 5/16/18.  (D.I. 1173 at Ex. 7.)

[7]   See entry for 3/11/16.  (D.I. 1173 at Ex. 7.)

[8]   See entry for 7/4 & 5/17.  (D.I. 1173 at Ex. 7.)

[9]   Similarly, the Audit objects to entries in early 2018 for drafting the tort claims procedures motion.  See entries for 1/12/18, 1/16/18, 2/4/18, 2/15/18, 2/20/18, 3/1/18.  (D.I. 1173 at Ex. 7.)  Attorney Rohn, as a representative of most of the tort claimants and a member of the Oversight Committee, was intimately involved in the negotiation of those procedures and the Court finds that no additional description is warranted.

12

relate to research and analysis of claims,[10] drafting a chart and memo with recommendations for the claims,[11] and drafting a memo of law in opposition to the insurers' motion to dismiss.[12]  The Court finds those entries to be sufficiently detailed and not excessive.

        3.   <u>Duplicative services/intra-office conferences</u>

The bulk of the objections relate to entries that Attorney Rohn describes as duplicative and/or intra-office conferences or communication.  Specifically, she objects to one or more professionals meeting or otherwise communicating with each other or with the Liquidating Trustee about case-related matters.  While courts have reduced fee applications where the services rendered are duplicative, the courts have also recognized the importance of intra-office conferences in large cases.  "In a complex case, however, one attorney cannot perform all the tasks required.  Where more than one attorney is involved, a certain amount of intra-office conferencing is necessary in order to coordinate their tasks."  <u>In re 14605, Inc.</u>, No. 05-11910, 2007 WL 2745709, at *10 (Bankr. D. Del. 2007).  Such a delegation of work assures that lower level attorneys and paralegals do the

---

    [10]    See entry for 11/9/16, 1/5/17.  (D.I. 1173 at Ex. 8.)

    [11]    See entry for 12/14/16, 6/26/17, 5/7/18.  (D.I. 1173 at Ex. 8.)

    [12]    See entry for 10/10/17, 10/13/17, 10/15/17, 10/16/17.  (D.I. 1173 at Ex. 8.)

work that does not require the experience of the highest-billing partner, thereby reducing fees charged to the estate overall.

As aptly noted by the Court in the Jefsaba case:

> Further, in light of our strong support for the use of paralegals and associates, we recognize the need for intra-office conferences so that matters can be discussed and assignments made and reviewed. All participants may bill for the time spent in the intra-office conferences [because] . . . when more than one professional is working on the same matter, communication and coordination is required. One person must be aware of what everyone is doing or unnecessary duplication of work will result.

In re Jefsaba, Inc., 172 B.R. 786, 800 (Bankr. E.D. Pa. 1994) (emphasis omitted).

The Audit asserted that 225 hours of the 2200 hours billed by Dentons for the period from February 2016 through July 2018 were objectionable on this basis; for WMC it was 155 hours of 1000 hours.[13] Much of the intra-office time was spent among attorneys working on the same matter in the case getting assignments, reviewing each other's work, or updating each other on developments. There were instances where more than one attorney working on a matter met with the Liquidating Trustee and/or the Oversight Committee to review that matter. The Court finds that all of those services were appropriate and could be billed by both attorneys. Id.

A few of the objections were to the work of more than one

---

[13] D.I. 1173 at Exs. 7 & 8.

14

attorney revising an objection or memorandum.[14] The Court rejects this objection because it is appropriate for an attorney and his supervisor to review each other's draft pleadings, significant reports to the client or communications with opposing counsel. There is one objection to two attorneys attending a hearing.[15] That hearing was a significant one, on the motion filed by Attorney Rohn to enlarge the time within which tort claimants could make an election and a motion to quash a subpoena,[16] and both attorneys had been involved in preparation for that hearing. The Court will allow compensation for both.

After a review of the Audit and the bills attached, the Court believes that the amount of time spent in communication and coordination among the lawyers for the Liquidating Trustee was appropriate. Therefore, the Court concludes that even if the objection of Attorney Rohn to the fee requests of counsel for the Liquidating Trustee was not barred by the doctrine of laches, it is meritless.

    4.   <u>Conflict of interest</u>

The Court also rejects as meritless Attorney Rohn's suggestion that counsel had a conflict of interest with the

---

[14] See entries for 11/14/16 and 5/17/18, for example. (D.I. 1173 at Ex. 7.)

[15] See entry for 6/14/18. (D.I. 1173 at Ex. 7.)

[16] D.I. 1061, 1087.

15

Liquidating Trustee once an objection to their fees was raised. Apparently she contends that the Liquidating Trustee was required to hire independent counsel at that time to evaluate the objection. The Court rejects this assertion as the procedure identified in the Liquidating Trust Agreement did not mandate that; rather the Agreement provided that fees were subject to approval of the Liquidating Trustee and the Oversight Committee themselves.

Attorney Rohn correctly states that in bankruptcy cases attorneys typically cannot charge fees for defense of their fee applications. Baker Botts L.L.P. v. ASARCO LLC, 135 S.Ct. 2158 (2015). However, the Supreme Court in that case ruled only that the Bankruptcy Code itself did not provide for the payment of those fees. Id. at 2164-65. It did acknowledge, however, that parties could agree to the payment of such fees. Id. at 2164.

In this case, Dentons' and WMC's fees have been approved by agreement of the Liquidating Trustee and the Oversight Committee in accordance with the procedures established by the Liquidating Trust Agreement. Accordingly, the Court will not disallow those fees.

III. CONCLUSION

For the reasons stated above, the Court will deny the Motion of Attorney Lee J. Rohn for Disgorgement of Fees or in the

Alternative for a Fee Audit.

An appropriate Order follows.


Dated: December 12, 2018

BY THE COURT:

*Mary F. Walrath*

Mary F. Walrath
United States Bankruptcy Judge